**Manuel IGLESIAS, Plaintiff,**

v.

**The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Defendant.**

**Civil No. 91–1496 (RLA).**

United States District Court, D. Puerto Rico.

Feb. 7, 1996.

Charles S. Hey–Maestre, Río Piedras, Puerto Rico, for plaintiff.

Roberto O. Maldonado, Puerto Nuevo, Puerto Rico, for defendant.

*ORDER IN THE MATTER OF PLAIN-TIFF'S RULE 60(b) REQUEST, DEFENDANT'S JURISDICTIONAL AMOUNT ARGUMENT AND IN THE MATTER OF CONTRACT CLAIM*

ACOSTA, District Judge.

## BACKGROUND

Plaintiff instituted these proceedings challenging his employer's decision to discontinue

marketing certain noncancellable disability insurance policies and claiming dismissal from employment in violation of both federal and local provisions. In our Order in the Matter of Report and Recommendation filed on July 1, 1994 (docket No. 85) we dismissed all discrimination claims as time-barred but reserved for trial the unjust dismissal claim under Law 80 of May 30, 1976, P.R. Laws Ann. tit. 9, §§ 185(a) *et seq.* (1985) as well as the breach of contract action.

Plaintiff has moved for reconsideration of our ruling dismissing the discrimination claims and in the alternative, certification of the partial judgment under Rule 54(b) Fed. R.Civ.P. Defendant, on the other hand, has challenged the jurisdictional amount as well as the soundness of the contract claim. These motions will be addressed in a consolidated fashion for easier reference due to overlapping facts.

## RULE 60(b) REQUEST

### Timeliness

Plaintiff has moved the Court to reconsider its prior dismissal of the discrimination claims asserted pursuant to P.R. Laws Ann. tit. 29, § 146 (1985), Law 100 of June 30, 1959; 42 U.S.C. § 2000e, Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 1981 and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (ADEA) as time-barred. *See* Partial Judgment filed on July 1, 1994 (docket No. 87).

The provisions of Rule 60(b) Fed.R.Civ.P. are limited to petitions to vacate **final** judgments.

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and upon such terms as are just, the court may relieve a party ... from a <u>final judgment</u> ... for the following reasons....

(underline ours).

■ Since the judgment previously issued in this case did not dispose of all claims, it was not final absent a specific finding of finality under Rule 54(b) Fed.R.Civ.P.[1] which was not made. Further prior to a final judgment being entered, courts have the inherent authority to reconsider rulings issued throughout the proceedings. Thus, plaintiff's motion was timely made and we may entertain his arguments.

### Accrual

■ Plaintiff alleges that the statute of limitations for the discrimination claims did not begin to run until after he was denied reinstatement upon the cessation of his disability. In support thereof, he cites *Vélez Rodríguez v. Pueblo Int'l, Inc.,* 94 JTS 37 (March 18, 1994) which was decided after the issue had been briefed by the parties and the motions were under advisement.

In *Vélez Rodríguez,* plaintiff sought reinstatement to his previous employment upon recovery from his work-related condition. The Puerto Rico Supreme Court held that the applicable limitations period for an action based on failure to reinstate under the P.R. Workmen's Compensation Act, P.R. Laws Ann. tit. 11, § 7 (1977) was three (3) years. Further, it ruled that the claim accrued upon denial of reinstatement which denial the Court found was tantamount to a dismissal.

The situation in the *Vélez Rodríguez* case however, is distinguishable. For purposes of the statute of limitations, the dismissal in that case occurred when reinstatement was denied since there is a specific provision in the Workmen's Compensation statute which mandates employers to reserve the position to employees disabled as a result of a work-

---

1. Rule 54(b) Fed.R.Civ.P. reads:

**(b) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ... however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims ... and the order or other form of decision is <u>subject to revision at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all parties.</u> (underline ours)

related injuries and to reinstate them once the disability ceases. *See* P.R. Laws Ann. tit. 11 § (1977). That ruling responded to the particular nature of the Workmen's Compensation Act which provides a more extensive application in that it seeks to secure employment as opposed to providing for economic protection. *Vélez Rodríguez*, 94 JTS 37 at 11689. No similar provision exists under any of the statutes listed in the complaint nor has plaintiff pointed to any legal grounds for safeguarding his position while receiving disability benefits under the insurance plan provided by his employer.

Thus, we find that there is no basis for finding that the discrimination claims were somehow tolled during the period plaintiff was receiving disability insurance benefits and that the actions accrued when he reapplied for his manager position.

Additionally, plaintiff contends that he never agreed to retire or resign prior to his disability and that the notice for purposes of the limitations period was the rejection of his petition for reinstatement. However, we find that the question is better addressed by the unequivocal intention of the employer which was clear and final and made known to MR. IGLESIAS both prior and shortly after he went on disability status. The sequence of events leading to the alleged "forced retirement" clearly establishes that at the time plaintiff went on disability he had already been clearly notified of the employer's final decision to terminate his services which decision was further confirmed while he was receiving disability benefits.

The following uncontested facts were previously related in our Order in the Matter of Report and Recommendation:

1. At a meeting held in **October 1988**, MR. ROBERT H. KRAMER advised plaintiff that he had the option of voluntarily retiring from MONY or otherwise he would be retired. (Plaintiff's depo. Tr. 61–71, Exh I, docket No. 22)

2. Plaintiff requested disability benefits due to his back condition in **December 1988**.

(Plaintiff's depo. Tr. 61, 67–68, Exh. I, docket No. 22)

3. In a letter dated **December 28, 1988**, MR. ROBERT H. KRAMER advised plaintiff of the details concerning his "early retirement" with the particular payment terms. Additionally, the letter made reference to the specific date when his employment with MONY would cease. In pertinent part it read: "[y]our last day at work will be **February 1, 1989**".[2] (Exh. VII, docket No. 14)

4. Plaintiff's claim for temporary disability benefits was approved on **January 25, 1989**. (Plaintiff's depo. Tr. 67–68, Exh. I, docket No. 22)

5. In a letter addressed to plaintiff dated **February 9, 1989** MR. KRAMER stated "you should file your early retirement papers so that as soon as you come off disability you will go straight into early retirement". Plaintiff was further admonished that he would "no longer be authorized to sign-off or act as Manager." (Exh. IX, docket No. 14)

6. In a letter dated **May 8, 1990** plaintiff was advised that his disability income benefits had ceased due to the improvement in his back condition. (Exh. X, docket No. 14)

7. On **May 15, 1990** plaintiff wrote to MR. KRAMER requesting to be reinstated to his Manager position since he was no longer disabled. The letter reads, in pertinent part:

As you recall, in the latter part of 1988 you told me to retire or I would have to be terminated as Agency manager. I requested a retirement quotation and was contemplating retirement, until my cervical column problems forced me to make a disability claim and postpone my decision in regard to your petition to retire or be terminated.

(Exh. XI, docket No. 14)

8. MR. KRAMER responded on **May 17, 1990** advising that, since plaintiff "had agreed to take early retirement prior to [his] disability", MONY would be processing his retirement papers. (Exh. XII docket No. 14)

---

**2.** Plaintiff acknowledges receipt of this letter but alleges he did not sign it because he was not in agreement with its contents.

In his May 15, 1990 letter seeking reinstatement after his disability had ceased, plaintiff admitted having been given an ultimatum at the end of 1988 of either retiring or being forced to leave. Even assuming that the **December 28, 1988** correspondence with the retirement quotation and projected date for retirement was not sufficient notice, defendant's subsequent **February 9, 1989** letter clearly advised plaintiff that his retirement papers would be processed once he recovered from his disability. Thus, only the effective date of the retirement was held in abeyance pending the conclusion of plaintiff's disability status.

The rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the adverse employment action).

. . . .

After all, the point in time at which the consequences of the act become hardest to bear—which may or may not coincide with the occurrence of the act itself—has no relevance for purposes of framing the limitations period.

*Morris v. Gov't Dev. Bank of P.R.,* 27 F.3d 746, 749 (1st Cir.1994).

As previously indicated upon dismissal of the discrimination claims as time barred, defendant's allegedly discriminatory acts were explicitly made known to plaintiff prior to and at the outset of his disability status. Only the effective date of such discrimination was postponed.

Plaintiff rests his entire argument regarding accrual on the fact that he allegedly never made a final decision to retire and therefore, there is an issue of fact regarding defendant's contention that he chose to leave. At the September 1988 meeting plaintiff was advised of MONY's unequivocal determination to dismiss him. The only contingency was his choice of method of departure. The fact that plaintiff was given the option to retire "voluntarily" does not make the underlying determina-tion, i.e., his exit, less final for limitation purposes nor does the fact that the effective date may have been subsequently deferred until cessation of his disability status. It is also important to note that the alleged underlying discriminatory motives behind plaintiff's constructive dismissal, brought about as a consequence of the policy regarding disability insurance, were already known to him when confronted with defendant's decision in September of 1988.

Order in the Matter of Report and Recommendation at 11.

### CERTIFICATION

In the alternative, plaintiff requests that we certify as final the Partial Judgment issued on July 1, 1994 (docket No. 87) under the provisions of Rule 54(b) Fed.R.Civ.P. and 28 U.S.C. § 1292(b).

▪ Generally, only final judgments disposing of all parties and all claims will be entertained on appeal since piecemeal review is discouraged. *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 580 (1st Cir.1994); *Darr v. Muratore,* 8 F.3d 854, 862 (1st Cir. 1993). Further, "courts should go very slowly in employing Rule 54(b) when . . . the factual underpinnings of the adjudicated and unadjudicated claims are intertwined." *Maldonado–Denis,* 23 F.3d at 580. *See also Kersey v. Dennison Mfg. Co.,* 3 F.3d 482, 486 (1st Cir.1993) ("interrelationship or overlap between the legal and factual issues raised by the dismissed and pending claims" militate against certification). For example, the issues of accrual and the jurisdictional amount which in turn implicate the unresolved breach of contract issue as discussed in this Order.

In this case, all claims in the complaint arise essentially from a common origin. Additionally, we find no justifiable grounds for departing from the finality rule requirement. Accordingly, plaintiff's request for certification for immediate appeal is **DENIED.**

### JURISDICTIONAL AMOUNT

▪ Defendant has challenged our jurisdiction to entertain plaintiff's claim for dis-

missal without just cause brought under the provisions of Law No. 80 of May 30, 1976 P.R. Laws Ann. tit. 29, §§ 185a *et seq.* (Supp. 1991) alleging that the computation of damages due under this statute does not meet the minimum jurisdictional amount.

Pursuant to § 185a, employees discharged from employment without good cause are entitled to severance pay or "mesada" computed as follows:

(a) the salary corresponding to one month as indemnity;

(b) an additional progressive indemnity equivalent to one week for each year of service.

This "compensation ... shall be paid on the basis of the highest rate of salary earned by the employee during the **three (3) years** immediately preceding his discharge." § 185d (emphasis ours).

The parties disagree on two different matters bearing on the application of this formula. First, they have different opinions as to which is the highest salary for computation purposes. Additionally, they also differ on the number of years of employment.

### Date of Dismissal

It is uncontested that plaintiff commenced working for MONY in **1976**. According to plaintiff, he was employed a total of **14** years, that is, up to and including 1990 the period during which he was receiving disability benefits.

Defendant, on the other hand, argues that the effective dismissal date was **February 1, 1989** and thus, his employment lasted **13** years in total. Because we find that the monies due plaintiff under either of these two terms of employment does not reach $50,000, the utilization of 13 or 14 years is immaterial.

### Wages

■ Plaintiff argues that the disability benefits received during **1989** should be computed as wages for purposes of Law 80 since these amounts are considered as taxable income.

■ Wages for purposes of Law 80 includes all kinds of compensation including commissions. However, it is limited to payment for services rendered. *Beauchamp v. Holsum Bakers,* 116 D.P.R. 522, 526 (1985). Even though certain disability benefits may substitute income and are subject to tax, payment thereof cannot be considered as compensation for services within the meaning of the statute since the employee is not rendering any services to his employee during this time. As a matter of fact, implicit in the award of these benefits is the fact that the employee is unable to work. Therefore, we disagree with plaintiff's argument that the $12,205.60 monthly disability benefits paid in 1989 should be treated as wages for purposes of the computation of the "mesada" under § 185d.

According to defendant, plaintiff's earnings from 1986 through 1988 [3] were as follows:

| YEAR | TOTAL |
|------|-------|
| 1986 | $101,353.15 |
| 1987 | $106,610.29 |
| 1988 | $139,341.14 |

These amounts have not been contested by plaintiff. Rather, plaintiff argues that the disability benefits received during 1989, which represent a higher amount, should be utilized instead for determining his weekly wages.

Inasmuch as we find that the disability benefits may not be utilized for computation of the "mesada", we shall utilize instead the wages for 1988, i.e., $139,341.14 which represents a weekly income of $2,679.64 and a monthly income of $11,611.76. As noted below, utilizing the computation for either 13 or 14 years we do not reach the jurisdictional minimum amount for the Law 80 claim.

|  | $ 2,679.64 (1 week) |  |  | $ 2,679.64 (1 week) |
|--|--|--|--|--|
|  | × **13 years** |  |  | × **14 years** |
|  | $34,835.32 |  |  | $39,433.52 |
|  | + 11,611.76 (1 month) |  |  | + 11,611.76 (1 month) |
| **MESADA** | **$46,447.08** | **MESADA** |  | **$49,126.72** |

3. *See* Attachment to the Motion for Summary Judgment for Lack of Subject Matter Jurisdiction, filed by defendant on October 6, 1994 (docket No. **90**).

The minimum amount set forth in 28 U.S.C. § 1332(a) is an essential jurisdictional requirement and failure to meet this threshold demands dismissal. *Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1 (1st Cir.1995). Further, once challenged, it is plaintiff's burden to set forth sufficient underlying information to establish, to a legal certainty, that the claim(s) meet this condition. *Department of Recreation v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir.1991). Accordingly, we find that the Law 80 claims, by themselves, fail to meet the jurisdictional amount.

However, damages resulting from the only other remaining claim asserted in the complaint must be examined to determine whether or not dismissal is in order inasmuch as plaintiff may aggregate the damages asserted under his various causes of action. *See Davis H. Elliot Co., Inc. v. Caribbean Utilities, Co., Ltd.*, 513 F.2d 1176 (6th Cir.1975).

### BREACH OF CONTRACT CLAIM

Apart from the alleged Law 80 violation, the only other cause of action currently pending in this case is the breach of contract claim under the Puerto Rico Civil Code set forth in the fourth cause of action in the Amended Complaint. Paragraph 47 merely states that "[d]efendant's denial of non-cancelable disability insurance product for sale by plaintiff constitutes a breach of contract". The contracts alluded to are listed in paragraphs 36–40 of the amended complaint which authorize him to "solicit applications for insurance in MONY of the types of insurance which MONY is issuing."[4] All contracts were limited to "such kinds of insurance [plaintiff was] licensed to solicit and service under applicable law." Therefore,

plaintiff's authority as underwriter for MONY was limited to the products issued by defendant and as otherwise restricted by plaintiff's license.

Even though we had previously denied defendant's request for dismissal of this claim we find that given the discrete issues that remain outstanding and defendant's recent arguments, it merits our consideration to focus on the narrow contractual interpretation of this controversy. Accordingly, our ruling on defendant's Motion for Summary Judgment for Lack of Subject Matter Jurisdiction, filed on October 6, 1994 (docket No. 90)[5] is hereby held in abeyance pending further arguments on the contract claim.

### CONCLUSION

Plaintiff's Motion and Memorandum of Law for Relief from Judgment pursuant to F.R.Civ.P. 60(b) and/or for Certification to the Court of Appeals, filed on June 27, 1995 (docket No. 107) is **DENIED.**[6]

It is further ORDERED that plaintiff shall file a motion addressing defendant's arguments challenging the absence of a contractual obligation[7] no later than **March 8, 1996.**

IT IS SO ORDERED.

---

4. The 1976 was the only one with different wording which stated:
   **5. GENERAL PROVISIONS**
   (a) This contract pertains only to business done in the territory of the Agency indicated in the caption of this contract....

5. *See also* Motion Supplementing Motion for Summary Judgment ... filed on December 8, 1994 (docket No. 8); Motion in Opposition ...

filed on December 27, 1994 (docket No. 96) and Reply ... filed on April 12, 1995 (docket No. 105).

6. *See* Opposition ... filed on August 29, 1995 (docket No. 112).

7. *See* Reply ... filed on April 12, 1995 (docket No. 105).