Madison v. St. Joseph Hosp.          CV-95-239-SD  08/28/96 P

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


Pamela Madison


   v.                                        Civil No. 95-239-SD


St. Joseph Hospital


O R D E R


   In this civil action, plaintiff Pamela Madison alleges a federal claim of employment discrimination based on disability in violation of the Americans with Disabilities Act of 1990 (ADA), Pub. L. No. 101-336, 104 Stat. 327 (codified at 42 U.S.C. § 12101, et seq.), against defendant St. Joseph Hospital. Plaintiff brings additional state law claims for wrongful termination and enhanced compensatory damages.

   Presently before the court is defendant's motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Both parties have, with leave of the court,[1] filed reply memoranda.

---

[1]Plaintiff's assented-to motion for leave to file a reply memorandum, document 12, is herewith granted.  Said reply memorandum has been considered by the court in conjunction with the other pleadings and is ordered docketed as of the date of this order.

<u>Background</u>[2]

Plaintiff Pamela Madison was employed as a charge nurse with St. Joseph Hospital from June 1992 until she was discharged in July 1993.  Amended Affidavit of Pamela Madison ¶ 1.  In her Charge of Discrimination filed with the New Hampshire Commission for Human Rights (NHCHR), Madison alleges she was discharged on July 2, 1993.[3]  <u>See</u> April 29, 1994, Charge of Discrimination (attached to Defendant's Motion to Dismiss).

On July 2, 1993, Madison received a telephone call from Jean Montana, who, on behalf of the hospital, informed plaintiff that she was no longer employed with St. Joseph Hospital.  Amended Madison Affidavit ¶ 2.  According to plaintiff, she was not given a reason for the termination at that time.  Plaintiff's Memorandum of Law at 3.  One day later, July 3, 1993,[4] plaintiff

---

[2]The following facts are not in dispute or, except as otherwise noted, have been alleged by the plaintiff.

[3]Although Madison's charge of discrimination originally alleged the termination occurred on July 3, 1993, <u>see</u> <u>id.</u> ¶ 5, she later corrected the date to July 2, 1993, <u>see</u> Madison letter to NHCHR dated April 26, 1994 (attached to Defendant's Motion to Dismiss).

[4]The court notes that plaintiff's affidavit and supporting memorandum of law contain numerous inconsistencies, even subsequent to amendment at the court's request, as to the <u>years</u> in which the events in question took place.  The dates which appear here have been verified by various documents appended to the parties motions and memoranda.

received a formal letter of discharge and associated termination paperwork, id. ¶ 3, which listed as the reason for her dismissal a "violation of hospital policy HR-26," see St. Joseph Hospital Personnel/Change Form (attached to Plaintiff's Objection as Exhibit B).

Approximately nine months later, on April 5, 1994, Madison telephoned the NHCHR and spoke with an investigator concerning the alleged ADA violation. Amended Madison Affidavit ¶ 5. On April 29, 1994, the NHCHR received plaintiff's written Charge of Discrimination. Madison's charge was thereafter forwarded to the Equal Employment Opportunity Commission (EEOC) on May 4, 1994, which issued a Notice of Right to Sue on February 2, 1995.

Madison was informed therein that her complaint was "untimely filed with the Commission, i.e. [she] waited too long from the date of the action of which [she] complained to file [her] charge." See Notice of Right to Sue--Title VII/ADA (attached to Plaintiff's Objection as Exhibit E). Madison elected to "not dispute the Notice of Right to Sue" with the EEOC because she "wanted to file [her] ADA claim in the federal court," Amended Madison Affidavit ¶ 8, which she did on May 3, 1995.

## Discussion

### 1. Summary Judgment Standard[5]

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. In its review, the court must scrutinize "the entire record, indulging all reasonable inferences in that party's favor." Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992) (citing Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). "Nonetheless, the nonmovant cannot content himself with unsupported allegations, rather, he must set forth specific facts, in suitable evidentiary form to establish the existence of a genuine issue for trial." Id.

---

[5]As both parties in this case have appended numerous documents to their pleadings, defendant's motion to dismiss is herewith converted to a motion for summary judgment. See Puerto Rican-American Ins. Co. v. Benjamin Shipping Co., 829 F.2d 281, 285 (1st Cir. 1987) (when there is "no unfair surprise and plaintiffs have ample opportunity to provide the court with any relevant information outside the pleadings", the court may properly convert the motion to a summary judgment motion without notice to the parties); but see EEOC v. Green, 76 F.3d 19, 24 (1st Cir. 1996) (district court's "failure to expressly notify the parties of its intention to convert" Rule 12(b), Fed. R. Civ. P., motion to one for summary judgment or to provide "the parties with a minimum of ten days, pursuant to Fed. R. Civ. P. 56(c), in which to augment previous filings" will be excused only when "such a failure . . . is harmless").

4

"Questions anent to the applicability and effect of the passage of time on a particular set of facts often are grist for the summary judgment mill." McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Accordingly, "when a defendant moves for summary judgment based on a plausible claim that the suit is time barred, the onus of identifying a trial-worthy issue customarily falls on the plaintiff." Id. (citing Morris v. Government Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994)).

## 2. Timely Filing under the ADA

The Americans with Disabilities Act of 1990 was intended "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities . . . ." 42 U.S.C. § 12101(b)(1) (1995). Count I of Madison's complaint invokes Title I of the ADA, which generally provides that no employer subject to the provisions of the ADA

> shall discriminate against a qualified individual
> with a disability because of the disability of
> such individual in regard to job application
> procedures, the hiring, advancement, or discharge
> of employees, employee compensation, job training,
> and other terms, conditions, and privileges of
> employment.

42 U.S.C. § 12112(a). The definition of the term "discrimination" under Title I includes, in pertinent part:

5

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity . . . .

42 U.S.C. § 12112(b)(5)(A).

"There are several requirements that a plaintiff must meet . . . prior to filing suit in federal court." McKinnon v. Kwong Wah Restaurant, 83 F.3d 498, 504 (1st Cir. 1996) (citing 42 U.S.C. § 2000e-5). "For example, a plaintiff must file a timely EEOC charge against the discriminatory party, and receive notice of a right to sue." Id. The "filing [of] a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) (footnote omitted); accord McKinnon, supra, 83 F.3d at 505 ("If the charging requirement is merely a conciliation or compliance procedure prior to filing suit in federal court, it is subject to waiver, estoppel and equitable tolling.").

> By holding compliance with the filing period to be not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires, we honor the remedial purpose of the legislation as a whole without negating the particular purpose

6

> of the filing requirement, to give prompt notice
> to the employer.

Zipes, supra, 455 U.S. at 398; see also Delaware State College v.

Ricks, 449 U.S. 250, 256-57 (1980) (purpose of Title VII

limitations period is to "guarantee[] the protection of the civil

rights laws to those who promptly assert their rights, [while]

also [to] protect employers from the burden of defending claims

arising from employment decisions that are long past" (citations

omitted)).


### a. Accrual

The issue before the court is whether Madison's ADA claim is

time barred as a matter of law.[6]

In the case at bar, plaintiff initially contacted the NHCHR

by telephone on April 5, 1994, Amended Madison Affidavit ¶ 5,

but her written charge was not received by that agency until

April 29, 1994. Madison asserts that the 300-day clock began to

---

[6]The court acknowledges the distinction between an administrative filing period and a statute of limitations period, where the former is usually shorter, sometimes significantly, than the latter. Since the issue before the court is generally one of accrual, however, precedent that discusses accrual in the context of a statute of limitations provides potent, and dispositive, analogies for the instant issue of timely administrative filing. Although the respective terminal points may differ, both filing periods accrue at the same point in time.

run on July 3, 1993, the day she actually received the termination letter and associated paperwork, since only then did she realize St. Joseph Hospital was retaliating against her for taking action under the ADA.  Plaintiff's Objection at 3.

Using July 3, 1993, as the operative date, April 29, 1994, was then the 300th, or last, day available to the plaintiff within the filing period.[7]  Defendant contends, however, that the 300-day period commenced to run the previous day, July 2, 1993, when Madison learned she was no longer employed with St. Joseph Hospital.  Defendant's Motion at 4.  In this scenario, the plaintiff's charge was untimely filed on the 301st day after the

_____

[7]The court notes that plaintiff's argument advances along discovery-rule-like lines, rather than equitable tolling. Whereas "the 'polestar' of the discovery rule is not the plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to the plaintiff," Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994) (citation omitted), equitable tolling requires an employee to prove "not only that he was unaware of the employer's discriminatory animus but also that the employer actively misled him, to his detriment," Morris, supra, 27 F.3d at 750 (citation omitted).  Plaintiff has not asserted, and the facts do not support, the latter argument.  Thus, none of the Zipes factors-- waiver, estoppel, or equitable tolling--operate to expand the 300-day filing window.  See Zipes, supra, 455 U.S. at 393.  The timeliness of plaintiff's charge accordingly rises or falls upon whether her present claim was known or knowable on July 2 or 3, 1993.  E.g., Quillen v. American Tobacco Co., 874 F. Supp. 1285, 1292 (M.D. Ala. 1995) ("Failure to file before . . . time elapses requires the court to dismiss a subsequent lawsuit as untimely." (citations omitted)).

alleged unlawful event.

Under Title VII of the Civil Rights Act of 1964,[8] a complainant's charge of discrimination must be filed with the EEOC within 180 days after the alleged unlawful event unless it is initially filed with a state agency, in which case the charge must be filed within 300 days of the event.  See 42 U.S.C. § 2000e-5(e)(1).  Since New Hampshire is such a "deferral" state, complainants are allowed the extended 300-day window in which to lodge their charge.

> Taken together, the deferral and deadline
> provisions of Title VII mean, first, that a charge
> filed with a state agency by the 240th day after
> an alleged violation always will be timely under
> federal law because the 60-day deferral period
> will run within the 300-day limitation period, and
> second, that a charge submitted after the 240th
> day will be timely only if the state "terminates"
> its proceedings by the 300th day.

Isaac v. Harvard Univ., 769 F.2d 817, 819 (1st Cir. 1985).[9]

"[A] state agency 'terminates' its proceedings when it declares that it will not proceed, if it does so at all, for a

---

[8]Title I of the ADA has adopted Title VII's enforcement provisions.  See 42 U.S.C. § 12117(a).

[9]Assuming April 29, 1994, as the filing date of the discrimination charge, whether Madison's ADA claim accrued on July 2 or July 3, 1993, may be irrelevant if the NHCHR did not "terminate" its proceedings until May 4, 1994, the day plaintiff's charge was actually forwarded to the EEOC--the 305th or 306th day after the discriminatory event.

specified interval of time." EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 115 (1988). Under the terms of the EEOC-NHCHR Worksharing Agreement for fiscal year 1994,

> The Agency [NHCHR] waives its exclusive processing rights granted to it under Section 706(c) and 706(d) [2000e-5(e) and 2000e-5(f)] of Title VII in order to facilitate the EEOC to initially process the following categories of charges:
>
> 1. Charges received by the Agency that either are not jurisdictional or are untimely with the Agency but which are jurisdictional and timely with EEOC.
> . . . .
> 10. The Agency will grant advance waivers of their 60 day exclusive jurisdiction over all Title VII charges, including dual filed charges received between 180 and 300 days after the date of alleged discrimination. All such charges shall be referred by the Agency to EEOC for initial processing within 72 hours of receipt by the Agency;
> . . . .
> 12. Charges filed with the Agency in which the charging party specifically requests in writing that the EEOC processes the charge.

FY 1994 Worksharing Agreement §§ II.E(1), (10), (12) (emphasis added). Moreover, "[i]n order to facilitate the assertion of employment rights, the EEOC and the Agency each designate the other as its agent for the purpose of receiving charges. . . . For the purpose of determining timeliness of filing, the effective date of filing a charge will be the date that the initial receiving agency first accepts the charge." Id. § IX.A.

10

"[A] state . . . agency's waiver of its exclusive jurisdiction over discrimination charges accomplishes three things:  A waiver effectively terminates state proceedings within the meaning of section 706(c).  It allows the EEOC to deem the charge filed, and it permits the EEOC to process the charge immediately."  Griffin v. City of Dallas, 26 F.3d 610, 613 (5th Cir. 1994) (citing Commercial Office Prods., supra, 486 U.S. at 112).  Thus, the court finds that the NHCHR's waiver of jurisdiction over Madison's charge, "and indeed over all charges filed after 180 days but before 300 days following the alleged discriminatory event, was self-executing."  Id.; cf. Green, supra, 76 F.3d at 23 & n.6 (noting ambiguities in EEOC-Massachusetts Commission Against Discrimination Worksharing Agreement).

The import of this construction of the pertinent statutory provisions and worksharing agreement waivers is that the "waiver instantaneously transform[s] the [NHCHR's] receipt of [Madison's] charge into a filing of that charge and authorized the EEOC to initiate proceedings on that charge immediately."  Griffin, supra, 26 F.3d at 613; accord Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 750-51 (7th Cir. 1995) ("Numerous courts have struggled with this issue and concluded, in different

11

circumstances, that the provisions of various worksharing agreements operate to provide claimants with the benefit of the 300-day filing period.") (collecting cases). Without question, however, "such filing is timely [only] if the charge is received within 300 days from the date of the alleged violation." <u>Id.</u> at 614 (quotation omitted). The question remains, therefore, when did Madison's claim of discrimination accrue--July 2 or July 3?

"[T]he date of accrual, i.e., the date on which the limitations clock begins to tick, is determined by reference to federal law." <u>Muniz-Cabrero v. Ruiz</u>, 23 F.3d 607, 610 (1st Cir. 1994) (citing <u>Rivera-Muriente</u>, <u>supra</u>, 959 F.2d at 353); <u>see also</u> <u>Street v. Vose</u>, 936 F.2d 38, 40 (1st Cir. 1991), <u>cert. denied</u>, 502 U.S. 1063 (1992); <u>Rodriguez Narvaez v. Nazario</u>, 895 F.2d 38, 41 n.5 (1st Cir. 1990). "Under federal rule, accrual commences when a plaintiff knows, or has reason to know, of the discriminatory act that underpins his cause of action." <u>Morris</u>, <u>supra</u>, 27 F.3d at 749; <u>see also</u> <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8 (1981); <u>Ricks</u>, <u>supra</u>, 449 U.S. at 258; <u>Thelen v. Marc's Big Boy Corp.</u>, 64 F.3d 264, 267 (7th Cir. 1995) ("A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." (citation omitted)); <u>Oshiver</u>, <u>supra</u> note 7, 38 F.2d at 1386 ("a claim accrues in a

12

federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong" (citations omitted)); Rivera-Muriente, supra, 959 F.2d at 353.

In considering the timeliness of a plaintiff's complaint, "the limitations periods commence[s] . . . when the [adverse employment] decision was made and [plaintiff] was notified." Id. at 259. The holding in Ricks--that the proper focus for determining the limitations window is on the time of the discriminatory act--has been subsequently affirmed in Chardon, supra, 454 U.S. at 8, overturning a First Circuit decision indicating otherwise and adopted by the other circuit courts of appeal, see, e.g., Thelen, supra, 64 F.3d at 267 (in employment discrimination cases, injury is the termination, and a plaintiff "discovers" such injury when employer communicates termination decision); Hulsey v. K Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994) ("A cause of action accrues . . . 'on the date the employer is notified of an adverse employment decision. Generally, an employee is notified of an adverse employment decision when a particular event or decision is announced by the employer.'" (quoting Gray v. Phillips Petroleum Co., 858 F.2d 610, 613-14 (10th Cir. 1988)); Merrill v. Southern Methodist Univ., 806 F.2d 600, 604-05 (5th Cir. 1986) (limitations period in Title VII

13

cases commences to run on date when plaintiff knows or reasonably should know that discriminatory act has occurred, not on date victim first perceived that discriminatory motive caused act).

Consequently, "[t]he Court of Appeals for the First Circuit has repeatedly held that the limitations period begins running when an employee first learns of his termination, and not when the employee first feels the effects of his termination." Runyon v. Massachusetts Inst. of Technology, 871 F. Supp. 1502, 1507 (D. Mass. 1994). E.g., Morris, supra, 27 F.3d at 750 ("It is by now well established that, in employment discrimination actions, limitations periods normally start to run when the employer's decision is made and communicated to the affected employee." (citing Ricks, supra, 449 U.S. at 261; Muniz-Cabrero, supra, 23 F.2d at 610)); Rivera-Muriente, supra, 959 F.2d at 353 (holding that unequivocal notice of the adverse employment action is all that is required to trigger the limitations period); Ching v. Mitre Corp., 921 F.2d 11, 14 (1st Cir. 1990) (limitations period began to run when employee learned of his employer's decision to discharge him and not later when he received formal notice).

By her own admission, Madison learned of her discharge in the July 2, 1993, telephone conversation with the defendant. Amended Madison Affidavit ¶ 2; See also Charge of Discrimination

14

(wherein Madison avers that the discrimination complained of took place, at its earliest and latest, on July 2, 1993). Although plaintiff now asserts that she "was unaware that I was terminated for cause until I received the termination letter on July 3, 1993," id. ¶ 3, such awareness is not determinative of the issue sub judice. See Oshiver, supra note 7, 38 F.3d at 1391 n.9 ("That [plaintiff] may not have known on [the date of the discharge] that her discharge constituted an actionable legal wrong does not matter for discovery rule purposes."); Morris, supra, 27 F.3d at 750 ("when an employee knows that he has been hurt [i.e., discharged] and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose. And the plaintiff need not know all the facts that support his claim in order for countdown to commence."); Iglesias v. Mutual Life Ins. Co., 918 F. Supp. 31, 35 (D.P.R. 1996) ("the point in time at which the consequences of the act become hardest to bear--which may or may not coincide with the occurrence of the act itself--has no relevance for purposes of framing the limitations period").

Insofar as the plaintiff learned of her employer's decision to discharge her and received effective, clear, and unambiguous notice of the adverse employment action on July 2, 1993, the

15

court herewith finds and rules that Madison's claims accrued on that date.  Thus, the 300-day administrative filing clock commenced to run thereon, later expiring on April 28, 1994.

Consequently, the court finds and rules that Madison's April 29, 1994, charge of discrimination was untimely filed.[10] Cf. Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of vague sympathy for particular litigants. . . .  '[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the litigation is the best guarantee of even handed administration of the law.'" (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 826 (1980))).

---

[10]The court further notes that since Madison was represented by counsel since, in the least, the time of her NHCHR filing, equity, under any construction of the facts, does not warrant tolling of the limitations period beyond the statutory 300-day limit.  See, e.g., Hamel v. Prudential Ins. Co., 640 F. Supp. 103, 105 (D. Mass. 1986) ("Civil rights laws need not be interpreted so as to make them traps for the unwary.  On the other hand, neither need the laws be interpreted so as to protect those who ought to know better from their own indolence.").

16

b.  <u>Filing</u>

Failing her accrual argument, plaintiff alternately asserts that she actually filed her charge on April 5, 1994, the day she telephoned the NHCHR.

Title VII provides that charges "shall be filed in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."  42 U.S.C. § 2000e-5(e)(1) (emphasis added).  The timeliness of the filing is determined by the date on which the charge is received by that agency.  29 C.F.R. § 1601.13(a); accord McIntosh, supra, 71 F.3d at 36 (filing date for limitations purposes was not triggered by mailing copy of complaint to district court nor by facsimile transmission of incomplete complaint; action was deemed filed when clerk of court actually received mailed copy); Johnson v. Host Enter., Inc., 470 F. Supp. 381, 383 (E.D. Pa. 1979) (plaintiff mailed employment discrimination charge to EEOC on 176th day after alleged unlawful discharge; however, his charge was not received by the Commission until 183 days after the discharge, and his Title VII claim was dismissed).

A certified copy of the Charge submitted to the court bears the NHCHR's stamp attesting that Madison's written charge of discrimination was received by the Commission on April 29, 1994.

17

See Charge of Discrimination.  Given the foregoing, the court
finds and rules that the plaintiff's alterative theory runs
contrary to applicable federal statute, regulation, and case law,
and, as such, is without merit.  Accordingly, plaintiff's claim
for relief under the ADA must be and herewith is dismissed with
prejudice.


4.  The State Law Claims

Plaintiff further invokes the supplemental jurisdiction of
this court, 28 U.S.C. § 1367, to assert state law claims of
wrongful termination and enhanced compensatory damages (Counts II
and III).[11]

"The power of a federal court to hear and to determine
state-law claims in nondiversity cases depends upon the presence
of at least one 'substantial' federal claim in the lawsuit."
Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (citing
United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).

---

[11]The court notes that given the First Circuit's recent
decision in Smith v. F.W. Morse & Co., 76 F.3d 413, 429 (1st Cir.
1996) (existence of statutory private right of action precludes
assertion of common law claim for wrongful discharge) (construing
Wenners v. Great State Beverages, Inc., 140 N.H. 100, 663 A.2d
623 (1995), cert. denied, ___ U.S. ___, 116 S. Ct. 926 (1996)),
plaintiff's wrongful termination claim, and by implication the
claim for enhanced compensatory damages, is tenuous, at best.

18

"'[P]endent' claims, by definition, consist of state matters over which Congress did <u>not</u> grant federal courts independent jurisdiction . . . ." <u>Id.</u> at 964.

Consequently, "when a district court dismisses all federal claims before trial, it normally will dismiss pendent state actions as well." <u>Id.</u> Although the court has considerable discretion in exercising its authority in this area, "the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity-- will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

Inasmuch as the sole federal claim has been dismissed and plaintiff's state law claims are of dubious vitality, the court in its discretion declines to exercise its supplemental jurisdiction.

<u>Conclusion</u>

For the reasons set forth herein, plaintiff's assented-to motion for leave to file a reply memorandum (document 12) is herewith granted, such reply memorandum to be docketed as of the date of this order. Defendant's motion to dismiss (document 7)

19

is granted.  The clerk shall enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 28, 1996

cc:  Gemma Dreher, Esq.
     Julie Ann Quigley, Esq.