John A. THELEN, Plaintiff–Appellant,

v.

MARC'S BIG BOY CORP., Marcus Corp., and Stephen H. Marcus, Defendants–Appellees.

No. 94–3421.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 21, 1995.

Decided Aug. 21, 1995.

Walter Kelly (argued), Milwaukee, WI, for John A. Thelen.

Stanley S. Jaspan, Lawrence T. Lynch (argued), Foley & Lardner, Milwaukee, WI, for Marc's Big Boy Corp., Marcus Corp., and Stephen H. Marcus.

Before POSNER, Chief Judge, and CUMMINGS and KANNE, Circuit Judges.

KANNE, Circuit Judge.

On November 9, 1987, John Thelen was terminated from his employment with Marcus Corp. and its wholly-owned subsidiary Marc's Big Boy Corp. On August 11, 1989, Thelen filed a charge with the Equal Employment Opportunity Commission, claiming that his discharge violated the Age Discrimination in Employment Act. He later filed an age discrimination suit in state court, along with state claims for breach of contract and intentional interference with an employment relationship. Defendants removed the case to federal court.[1] The district court granted the defendants summary judgment on the ADEA claim because Thelen did not file his

---

1. Subject matter jurisdiction for the state claims is predicated on both supplemental jurisdiction and diversity jurisdiction.

charge with the EEOC within 300 days of the discriminatory act, as the ADEA requires.[2] The district court also granted the defendants summary judgment on the state claims.

### ADEA Claim

Thelen argues on appeal that the discovery rule, equitable estoppel and equitable tolling make his ADEA claim timely. We review the district court's summary judgment *de novo*, reviewing the record in the light most favorable to Thelen. *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 796 (7th Cir.1995).

Under 29 U.S.C. § 626(d)(2), the plaintiff must file a charge with the EEOC within 300 days of the time that his action began to accrue. Thelen first argues that "the discovery rule extends the accrual of Thelen's claim until *some time after* October 21, 1988." That was the date his supervisor, Daniel Waldschmidt, told him that Douglas Nies, rather than Richard Heintz, had taken over Thelen's prior job duties. Nies was 33 years younger than Thelen, while Heintz was only six years his junior. Thelen claims that it was not until he learned who his replacement was that he suspected that he may have been a victim of age discrimination. Thus, Thelen asserts that his claim did not begin to accrue until he suspected that his termination was wrongful.

■ Thelen has confused the discovery rule with the doctrines of equitable tolling and estoppel. A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful. *See, e.g., Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir.1994) ("Teumer presents a meritless argument that the claim did not accrue until he first discovered the information from which he ascertained the alleged unlawful nature of the layoff. As GM rightly points out, such a contention has nothing to do with accrual; Teumer is really insisting that the limitations

clock should be equitably tolled for the time in which he was unable to determine that his injury (of which he was aware)—the layoff—was due to wrongdoing."); *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 281 (7th Cir.1993) (holding, in an ADEA case, that plaintiff-professor's action accrued when he was denied laboratory space); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990) (stating that equitable tolling "differs from the [discovery rule] in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrong-doing by the defendant.").

■ Thelen's injury was his termination. He "discovered" his injury on November 9, 1987 when Kenneth MacKenzie, Marcus Corp.'s Controller, informed Thelen that he was to be terminated, effective December 15, 1987. Thus, the statute of limitations on Thelen's action began on November 9. Thelen, therefore, must attempt to rely on the equitable doctrines of tolling and estoppel to make his claim timely.

■ We first examine whether Thelen can halt the running of the statute of limitations for any of the time between his discharge and October 21, 1988, the day he learned that Nies, not Heintz, was doing the work he had previously performed. Thelen first appears to claim that equitable estoppel applies to this period of time. Equitable estoppel—sometimes referred to as fraudulent concealment—"comes into play if the defendant takes active steps to prevent the plaintiff from suing in time," *Cada*, 920 F.2d at 450, such as by hiding evidence or promising not to plead the statute of limitations. Thelen argues that, because MacKenzie told him that Heintz would be taking over most of his job duties (when in fact Nies was to be his

---

**2.** Thelen named Stephen Marcus as a defendant to his ADEA claim. In *United States Equal Employment Opportunity Comm'n v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276 (1995), we held that there is no individual liability under the Americans with Disabilities Act. *Id.* at 1280. Because the relevant language in the ADA and ADEA are identical, it is likely that Stephen Marcus, as an individual, could not be liable under the ADEA.

replacement),[3] the statute of limitations should not begin until October 21, 1988. While Thelen's position has some support in other circuits, *see, e.g., Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1386 (3rd Cir.1994), we have declined to endorse it. It is the view of this court that such a position would eviscerate the concept of a limitations period because "[i]t implies that a defendant is guilty of fraudulent concealment unless it tells the plaintiff, 'We're firing you because of your age.'" *Cada,* 920 F.2d at 451; *see also Lever v. Northwestern Univ.,* 979 F.2d 552, 556 (7th Cir.1992).

■ Thelen also argues that equitable tolling applies to the time between his discharge and his discovery that Nies had taken over many of his job duties. A plaintiff may toll the statute of limitations if, despite all due diligence, he is unable to obtain enough information to conclude that he may have a discrimination claim. *See Chakonas v. City of Chicago,* 42 F.3d 1132, 1135 (7th Cir.1994); *Cada,* 920 F.2d at 451. Equitable tolling does not postpone the running of the statute of limitations until the plaintiff is *"certain* his rights had been violated." *Cada,* 920 F.2d at 451. Rather, the limitations period begins to run when a reasonable person would believe he *may* have a cause of action. This is especially true when the plaintiff need only file a charge with an administrative agency. A plaintiff has no duty of prefiling investigation for an administrative complaint. To the contrary, "one purpose of filing an administrative complaint is to uncover [facts relevant to the case]." *Pacheco v. Rice,* 966 F.2d 904, 907 (5th Cir.1992) (citation omitted).

■ Moreover, unlike equitable estoppel, the court does not grant the plaintiff a fresh 300 days to file his charge once he obtains enough information to suspect discrimination; he must file his charge with the EEOC within a reasonable time. *See id.* at 453. Thelen's argument fails to clear this hurdle. Assuming that Thelen did not have enough information to file his charge with the EEOC

until Waldschmidt told him that Nies was performing his duties, Thelen waited nearly 10 months, until August 14, 1989, to file his charge. Without some justification, such a delay is unreasonable; Thelen could have filed his administrative complaint within days, and at most weeks, of October 21, 1988. Thelen certainly had enough information to know that he may have been a victim of discrimination at this time—in fact he admits that that is so in his brief. After his discussion with Waldschmidt, Thelen claims he began his own investigation because he suspected age discrimination.

To account for the time between October 21 and August 14, Thelen first asserts that he performed his own investigation. But we have already noted that one need not perform a prefiling investigation for an administrative claim. We do not mean to suggest that one cannot perform *any* prefiling investigation, but, when a plaintiff has already missed the filing date imposed by the statute of limitations, moving too slowly thereafter can be fatal.

■ Next, Thelen claims that two government agencies lulled him into delaying filing his administrative claim. Thelen contacted a Department of Labor investigator in Milwaukee and was told to hire a lawyer. Thelen claims that finding an acceptable attorney took several months. Nonetheless, the advice to get a lawyer could hardly be intended to cause Thelen to forgo filing his administrative charge. As Thelen admitted he was aware, many, if not most, administrative complaints are filed without the assistance of an attorney. Thelen does not claim that the DOL investigator told him that he must hire a lawyer before filing his administrative complaint. Moreover, although a plaintiff may toll the statute of limitations for the time necessary to find an attorney when the employer did not post the required notice of ADEA rights, *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), Thelen does not claim that Big Boy failed to post such a notice.

---

*See id.* at 1280 n. 1. However, we need not reach that issue.

3. The defendants claim that Thelen's job duties were actually dispersed among several people, including Nies and Heintz.

Thelen also claims that an EEOC employee told him that, because of the circumstances of his situation, the statute of limitations would be tolled. We agree with the district court that Thelen's repeated failure to provide specific information as to how this delayed his filing of an administrative claim defeats this argument.

Thelen has provided no plausible justification for waiting 10 months after he suspected that he was a victim of age discrimination before filing an administrative complaint with the EEOC, and thus his ADEA action was time barred.[4]

### Contract Claim

The district court concluded that Thelen was, as a matter of law, an at-will employee and could therefore be terminated for any reason. Thelen alleges that he could be fired only for cause. He believes that his original contract of employment—his employment application—restricted his employment to cause dismissal, and even if this were not so, comments made to him by Mac-Kenzie and Waldschmidt transformed him into a for cause employee.

Wisconsin has a strong presumption in favor of employment at-will. *Forrer v. Sears, Roebuck & Co.*, 36 Wis.2d 388, 153 N.W.2d 587, 589–90 (1967). To overcome this presumption, a plaintiff must show that both parties intended to restrict the reasons for which an employee could be discharged. *Id.* Thelen cannot overcome this presumption. He clings to two statements in his original employment contract to argue that he was not an at-will employee. Thelen's employment application contained the following statements:

> It is understood and agreed that any agreement entered into between this company and the applicant is predicated upon the truthfulness of the statements herein contained. Mis-statements will constitute sufficient cause for dismissal.

> \* \* \*

> It is further understood and agreed that I will wear and properly maintain the prescribed uniform; that I will follow and adhere to the rules of my work and conduct prescribed or published by the company, and that failure to comply with any of the foregoing shall constitute sufficient cause for my dismissal.

> \* \* \*

Thelen attempts to transform these statements of what is a *sufficient* reason for an employee to be discharged into a requirement that it is *necessary* for the employer to have cause in order to dismiss an employee. The employment application does not state anywhere that the employer is restricted in the reasons for which it may discharge an employee. Moreover, the sentence sandwiched between the two quoted above states, "In the event of my employment by this company, it may terminate said employment at any time without notice." Read together, only one conclusion can be reached: Thelen was an at-will employee. The statements concerning "sufficient cause" were merely added to give employees a "heads up" on what conduct would assure them a place in the unemployment line.

Moreover, an employee handbook, upon which Thelen often relies in his brief, solidifies this conclusion. It states in unequivocal terms, "Employees are hired for an indefinite duration of employment without any express or implied contract of employment."

Thelen next argues that, even if he were an at-will employee when hired, statements made to him by his bosses provided him with a contract right in his employment. Thelen alleges that, in August 1986, "Mac-Kenzie told Thelen that he could be assured of work as long as MacKenzie was with

---

4. Thelen makes two additional meritless arguments. He claims that Big Boy impeded his investigation by moving his personnel records to Marcus Corp.'s downtown headquarters. However, Thelen spent his last year of employment at Marcus Corp.'s downtown office, and therefore it does not seem surprising that the company would have moved his personnel records. Additionally, he does not claim that he ever tried to acquire the records.

Thelen also claims that Big Boy and Marcus Corp. executives "clammed up" in response to his and a friend's inquiries into Thelen's dismissal. Such a vague claim cannot be the basis by which we will apply equitable estoppel.

Marcus [Corp.]." Thelen also claims that Waldschmidt told Thelen the same thing in 1984. Although the defendants contend that these statements were not made, we accept as true Thelen's version for purposes of summary judgment.

Nevertheless, we hold that such statements, as a matter of law, cannot overcome the strong presumption in favor of at-will employment. In Wisconsin, a promise of permanent employment, without more, "amounts to an indefinite general hiring terminable at the will of either party." *Forrer*, 153 N.W.2d at 587. Moreover, as mutual assent is necessary for any contract, to create a contract right in employment, the employer must have clearly manifested an intent to create binding rights. *Id.* at 589. In *Mursch v. Van Dorn Co.*, 851 F.2d 990 (7th Cir.1988), we held that, under Wisconsin law, similar statements ("so long as you do your job you can be here until you're a hundred") would not support a contract right in employment. We stated,

> In light of the informal, casual, and off-the-cuff nature of Howington's remark, we are convinced that no reasonable employee would or should expect that guaranteed employment would be the result of such a conversation. As one commentator has noted, "[e]mployers and employees, like everyone else, sometimes speak in hyperbole to express their feelings of loyalty and friendship but without intent to invoke the heavy machinery of the law to enforce the literal meaning of these words."

*Mursch*, 851 F.2d at 998 (quoting Holloway & Leech, Employment Termination: Rights & Remedies at 81–82). We find such sentiments equally compelling in this case. Holding otherwise would create huge uncertainties in employment contracts and would transform each case into a swearing contest at trial. If employees desire such assurances, they should get them in writing.[5]

## Tort Claim

Thelen's final claim is that Steven Marcus, President of both Big Boy and Marcus Corp. and Chief Operating Officer for Marcus Corp., intentionally interfered with Thelen's employment by terminating him for an improper collateral motive. However, the motive that Thelen alleges is a matter that this court will not review. Thelen claims that Steven Marcus fired him in order to purge Big Boy management of those that were contemporaries of the former President of Big Boy, Gene Kilburg.[6] As we stated in *Kumpf v. Steinhaus*, a case decided under Wisconsin law, "A contract at will may be terminated for any reason (including bad faith) or no reason, without judicial review; the only exception is a termination that violates a 'fundamental and well-defined public policy as evidenced by existing law.'" 779 F.2d 1323, 1326 (7th Cir.1985), quoting *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983). There is no "well-defined public policy" against a new company president removing those he perceives to be less than faithful to him. Such practices are not uncommon in the business world. The business judgment rule gives managers wide latitude to decide what is in the best interest of a company—without the judiciary peeking over their collective shoulders. Even if Steven Marcus' motive for discharging Thelen was to rid the company of contemporaries of the prior president, he did not tortiously interfere with Thelen's employment.

AFFIRMED.

---

5. Thelen also claims that the defendants should be estopped from asserting that these representations do not create a binding contract. But as we stated in *Mursch*, no reasonable employee would believe that statements like those made by MacKenzie and Waldschmidt would create binding rights. Therefore, he cannot show reasonable reliance.

6. The parties dispute whether Marcus or MacKenzie fired Thelen, but we assume for the sake of this discussion that Thelen has proffered enough evidence for a jury to conclude that Marcus made the decision to fire Thelen.