95 F.3d 1154
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Paul CRUSE, Annette deCaussin, Rebecca Guiterrez, Don
Jenkins, and Colleen Stevenson, Plaintiffs-Appellants,
v.
CHICAGO PARK DISTRICT, Defendant-Appellee.
 No. 95-3341.
 United States Court of Appeals, Seventh Circuit.
 Argued April 10, 1996.
Decided Aug. 20, 1996.
 
 Before POSNER, Chief Judge, and CUMMINGS and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Paul Cruse, along with four of his co-workers, filed a three-count complaint against their former employer, the Chicago Park District (CPD), alleging that (1) Cruse had been terminated in violation of Title VII, 42 U.S.C. § 2000e et seq., (2) this termination also violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and (3) Cruse and the other four plaintiffs had been terminated in breach of an oral employment contract that arose pursuant to Illinois law. On August 31, 1995, the district court granted the CPD's motion to dismiss on all counts. The court held that because Cruse did not file his complaint within 300 days of his termination, his Title VII and ADEA claims (Counts I and II) were time barred. In addition, the district court granted the CPD's motion to dismiss the state law contract claim (Count III) on the grounds that the alleged oral contract did not alter the plaintiffs' at-will employment and thus that the plaintiffs had failed to state a claim. We affirm.
 
 
 2
 Because this case comes to us from a motion to dismiss, we construe the complaint in the light most favorable to the plaintiffs, and we accept its allegations as true. See generally 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, at 304 (1990). Cruse was the Director of Internal Investigation for the CPD. On January 3, 1994, the CPD notified Cruse (a 69 year old Black man) that because of budget cuts, the CPD was eliminating the Investigation Department and thus that he would be discharged. As promised, on January 17, 1994, the CPD terminated both Cruse's employment and that of the other plaintiffs, Cruse's co-workers. On May 11, 1994, Cruse learned that the Investigation Department had not been eliminated. Worse yet, he learned that the CPD had appointed a new Director of the Investigation Department who is not Black and who, at the time of his appointment, was under 40 years old. Cruse filed a charge with the EEOC alleging age and race discrimination on December 21, 1994. On February 17, 1995, he received his right to sue letter from the EEOC.
 
 
 3
 Prior to the January 1994 notice, Cruse had had a discussion on October 21, 1993, with Forest Claypool, the General Superintendent of the CPD, for the specific purpose of allaying his concerns about rumored impending layoffs. Claypool assured Cruse that Cruse was not in danger and that he would "direct the internal investigation unit for the Chicago Park District for the period beginning January 1, 1994 and ending December 31, 1994." Claypool offered similar assurances about Cruse's co-workers. He specifically said that the 1994 budget had been approved and that their positions for 1994 were included in the budget at a salary comparable to their 1993 salary. Relying on these promises, all the plaintiffs took no steps to find other jobs and gave up job opportunities.
 
 1. Counts I and II (Title VII and the ADEA)
 
 4
 In order to bring a claim of discrimination in federal court under either Title VII or the ADEA, the plaintiff must file a charge with the EEOC within 300 days of the time that his action began to accrue. 42 U.S.C. § 2000e-5(e); 29 U.S.C. § 626(d)(2). The plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful. Thelan v. Marc's Big Boy Corporation, 64 F.3d 264, 267 (7th Cir.1995). Thus, Cruse's discrimination action accrued on January 17, 1994, the date that he was formally notified of his termination, and he was therefore required to file his claim with the EEOC by November 22, 1994 (within 300 days, because Illinois is a "deferral" state). He in fact filed his claim on December 21, 1994, several weeks too late.
 
 
 5
 Recognizing the seriousness of this problem, Cruse tries to save his claims by invoking the "discovery" rule and the doctrine of equitable tolling. He argues that he did not "discover" his potential cause of action until he found out on August 31, 1994, that he had been replaced by a White man under 40 years old. If, by this argument, he means that his claim did not accrue to begin with until August 31, 1994, he misunderstands the nature of the accrual rules in this circuit. A claim accrues when a person knows or should know of the act that gives rise to the injury, not when the person realizes that he may have a legal claim arising out of the injury. Here, the act giving rise to Cruse's injury was his January 17 termination, about which he plainly knew when it happened. Compare Sellars v. Perry, 80 F.3d 243 (7th Cir.1996).
 
 
 6
 Cruse gets no farther with the doctrine of equitable tolling, which can apply when, despite all due diligence, the plaintiff is unable to obtain enough information to conclude that he may have a discrimination claim within the relevant limitations period. See Chakonas v. City of Chicago, 42 F.3d 1132, 1135 (7th Cir.1994); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 451 (7th Cir.1990). Nevertheless, equitable tolling does not postpone the running of the statute of limitations until the plaintiff is "certain his rights had been violated." See id. at 451. A person's injury is his termination. In cases where the "discovery" of the potential wrongdoing is made within the limitations period, and when there is a reasonable time left to file an EEOC claim, the district court is well within its discretion not to toll the limitations period. See, e.g., Thelan, 64 F.3d at 268 ("unlike equitable estoppel, the court does not grant the plaintiff a fresh 300 days to file his charge one he obtains enough information to suspect discrimination; he must file his charge with the EEOC within a reasonable time."); Teumer v. General Motors Corp., 34 F.3d 542, 550 (7th Cir.1994) (holding that it is a "meritless argument" that Teumer's claim did not accrue until he discovered the information from which he could ascertain that his layoff was unlawful); Moskowitz v. Trustees of Purdue University, 5 F.3d 279, 281 (7th Cir.1993) (holding, in an ADEA case, that plaintiff's action accrued when he was denied laboratory space); Cada, 920 F.2d at 451.
 
 
 7
 By his own admission, Cruse discovered the facts necessary to lead him to suspect "wrongdoing" no later than August 1994. At that time, there were still three months left within the statutory filing period. Cruse, however, (by then represented by counsel) waited four months before filing his charge with the EEOC. As of August 1994, Cruse may not have been sure that he had a winning claim, but he certainly had enough information that would indicate the possibility of wrongdoing. He was therefore required to file his administrative charge in order to preserve his right to sue in federal court. See Thelan, 64 F.3d at 268. Cruse has not suggested (either in his brief of at oral argument) any sufficient reason why the three month period between August and November 1994 was inadequate for purposes of filing this charge. He claimed only that he was waiting to obtain a copy of his personnel file, but he could not explain why access to this file was a necessary predicate to his administrative filing. Under the circumstances, Cruse cannot show the "due diligence" required by Chakonas and Cada, and he was not entitled to the benefits of the equitable tolling doctrine.
 
 
 8
 Cruse also claims before this court that the limitations period should be equitably tolled because the CPD failed to post adequate notices informing its employees of their rights under Title VII and the ADEA. In the absence of such notices, he says that he cannot be presumed to have known about the statutory filing periods. This argument has two fatal flaws. First, Cruse waived it by not raising it in the district court in response to the CPD's motion to dismiss. Second, it is plainly without merit in any event. Cruse consulted with an attorney on August 14, 1994--two weeks before his "discovery" of the likely discrimination and 3 months prior to the end of the limitations period. Thus, he cannot now argue that he was unaware of the need to file with the EEOC within 300 days of his termination.
 
 
 9
 Finally, Cruse attempts to argue that the CPD should be equitably estopped from invoking the benefits of the limitations period. While it is true that the doctrine of equitable estoppel sometimes relieves a plaintiff from the requirement to file with the EEOC within 300 days, see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Chakonas, 42 F.3d at 1135; and Cada, 920 F.2d at 450, it does not help Cruse. Again, Cruse did not argue equitable estoppel below, and thus he waived the argument. Further, even if we could consider the argument, Cruse has not put forth any facts that would lead to the conclusion that the CPD took steps to prevent Cruse from making a timely filing. This deficiency is fatal to the claim. See Chakonas, 42 F.3d at 1135.
 
 
 10
 It is unfortunate (to say the least) that Cruse's attorney did not take the necessary steps for Cruse to make a timely filing with the EEOC. An EEOC filing is a fairly straightforward task that can be completed without cost and with a minimum amount of investigation. In fact, this court has held that a plaintiff has no duty of pre-filing investigation for an administrative complaint. See Thelan, 64 F.3d at 268. The very purpose of the filing requirement with the EEOC is to afford the agency an opportunity to investigate charges of discrimination to determine whether the situation is one that calls for redress in the courts. This administrative requirement is one that any lawyer who practices employment law should be well aware of. This is not to say that this court encourages meritless or frivolous EEOC filings--quite the contrary. However, given the facts as alleged by Cruse, the attorney in this case had a duty to make an administrative filing in order to preserve her client's rights. This failure has cost Mr. Cruse the ability to pursue his lawsuit.
 
 2. Count III (Oral Contract)
 
 11
 Finally, Cruse and the other plaintiffs argue that the alleged statement Claypool made to Cruse on October 21, 1993, created an enforceable oral contract for continued employment through December 31, 1994. Under Illinois law, employment contracts are presumed to be "at will" and are therefore terminable by either party for good reason, bad reason, or no reason at all. Duldulao v. Saint Mary of Nazareth Hosp. Center, 505 N.E.2d 314 (Ill.1987). The "at will" presumption can be rebutted by a showing that the parties contracted otherwise. Id. at 317-18. Oral employment contracts, under Illinois law, are viewed with more skepticism that their formal written counterparts. See Tolmie v. UPS, Inc., 930 F.2d 579, 581 (7th Cir.1991). Illinois law requires that an offer to support an oral employment contract be "clear and definite." Id. at 581 citing Koch v. Illinois Power Co., 529 N.E.2d 281, 284 (Ill.App. 3d Dist.1988).
 
 
 12
 Nothing in Claypool's statement to Cruse could be considered a "clear statement" of promised employment sufficient to change the plaintiffs' status as employees at will. The complaint alleges nothing that would indicate that Claypool, the General Superintendent, had apparent authority to make a promise that would override the CPD's official budget for the year. Cruse and the other plaintiffs recognized that the Board of Commissioners of the CPD had to approve the annual budget, and they conceded that the budget actually approved for 1994 did not provide for an internal investigations unit. (Indeed, Cruse relies on this fact in his equitable arguments for avoiding the statute of limitations.) Without the ability to rely on Claypool's statements, the evidence of an oral contract vanishes, and the statutory presumption of at will employment remains unrebutted.
 
 
 13
 The judgment of the district court is AFFIRMED.