**RAKOWSKI DISTRIBUTING, INC., Plaintiff–Appellant,**

v.

**MARIGOLD FOODS, INC., Defendant–Appellee.**

No. 98–2069.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1998.

Decided Oct. 1, 1999.

David F. Loeffler (argued), Krukowski & Costello, Milwaukee, WI, for Plaintiff–Appellant.

John A. Busch (argued), Michael, Best & Friedrich, Milwaukee, WI, for Defendant–Appellee.

Before RIPPLE, KANNE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

In this case, we once again confront a basic issue under the Wisconsin Fair Dealership Law, Wis. Stat. ch. 135 ("WFDL"): namely, whether the plaintiff Rakowski Distributing, Inc., was a "dealer" entitled to the protections the law affords against improper terminations. Rakowski believed it did enjoy dealer status under the law and sued Marigold Foods, Inc., when Marigold terminated a hauling contract it had with Rakowski without giving 90 days' notice and an opportunity to cure any problems (both of which the WFDL requires). Concluding that the undisputed facts showed that Rakowski did not have a statutory dealership and that the law thus did not apply, the district court granted summary judgment for Marigold. We affirm.

I

Rakowski is a small, family-owned trucking company headed by Donald Rakowski. Between 1985 and 1995, it devoted its business to hauling and distributing dairy products produced by Marigold under two oral agreements: a hauling contract and a distribution contract. Under the distribution contract, Rakowski purchased dairy products from Marigold and resold them at whatever price suited it to Rakowski's own retail and institutional customers in southeastern Wisconsin. Under the hauling contract, Rakowski received Marigold products from Marigold's Wisconsin dairy and hauled them to Rakowski's premises for overnight storage. The next day, Rakowski delivered the products to retail stores in the Chicago area for Marigold. Marigold paid Rakowski a straight fee for those services based on miles traveled, stops made, and down time. Rakowski's right to the fee did not depend on whether the Chicago-area customers paid Marigold. Instead, title to the products remained in Marigold until sale, and Rakowski did no marketing for Marigold. (As we know from a recent decision, see *Dean Foods Co. v. Brancel*, 187 F.3d 609 (7th Cir.1999), Marigold may have had good reason to structure some transactions so that they were Illinois sales rather than Wisconsin sales, because the location would have an important bearing on the applicability of Wisconsin law.)

The hauling contract, to which Rakowski devoted approximately 75% of its labor force, accounted for about 45% of Rakowski's total revenue and all of its profits. Over time, Marigold increased its use of Rakowski's hauling services, by adding stores to Rakowski's delivery list. Rakowski accepted these expansions and added vehicles as needed to accommodate them. During this time, Rakowski was Marigold's

exclusive Chicago-area hauler. Rakowski was not authorized to accept sales or orders from Marigold's customers, but it delivered business cards that showed both Rakowski's name and telephone number and the Marigold logo to the customers, in case they should have questions or complaints about service.

The distribution contract was in effect a loss-leader for Rakowski. Rakowski consistently lost money on that part of its operations, but it maintained the contract because it believed that if it canceled that aspect of its relationship with Marigold it would also lose the hauling business. Marigold never said this in so many words, but Rakowski believed it was implicit. In fact, after Marigold terminated the hauling contract, Rakowski sold off the distribution side of the company and went out of business.

In order to handle its Marigold business, Rakowski made fixed capital investments of approximately $750,000, of which $410,000 was devoted to the hauling work. By 1995, it devoted a fleet of 11 tractors and 25 trailers to the hauling contract; the trailers had each been fitted with a refrigeration unit and insulation. Rakowski had also acquired trailers that were shorter than normal, because they were better suited to Marigold's products. Again, Marigold had not insisted on these measures. Rakowski painted the cabs of the trucks with the name "Rakowski Distributing," but it painted the trailers with Marigold logos, and Marigold shared the cost of the trailer painting. At Marigold's request, Rakowski installed a lift gate on a trailer so that it could service one of Marigold's customers who did not have a proper loading dock. In the summer of 1995, after a relocation of Marigold's Wisconsin dairy had led to significant delays in loading, Rakowski purchased cellular telephones and pagers for its employees to use to keep in contact with Marigold.

Trouble arose for Rakowski when, in May 1995, its drivers struck for one day. Marigold threatened termination of the re-

lationship if Rakowski did not immediately settle the strike. Rakowski did so, essentially on the union's terms. On November 6, 1995, the Rakowski drivers struck again. To avoid disruption in service, Rakowski offered to use leased drivers familiar with the Chicago area, but Marigold rejected that option. Instead, a mere two days later, on November 8, 1995, Marigold terminated the hauling contract, on the ground that Rakowski's labor problems made it an unreliable source of hauling services. Marigold took no steps to terminate the distribution contract. This WFDL suit followed, based on diversity jurisdiction, which led to the judgment for Marigold.

## II

Under the WFDL, a "dealer" is "a person who is a grantee of a dealership situated in [Wisconsin]." Wis. Stat. § 135.02(2). Three requirements must be met for a business to qualify as a "dealership":

1. a contract or agreement, either express or implied, whether oral or written, between two or more persons;

2. by which a person is granted the right to sell or distribute goods or services or to use a trade name, trademark, service mark, logotype, advertising, or other commercial use symbol;

3. in which there is a community of interest in the business of offering, selling, or distributing goods or services at wholesale, retail, by lease, agreement, or otherwise.

Wis. Stat. § 135.02(3). The district court first decided that the hauling and distribution contracts addressed activities that were separate and distinct from one another, based on factors such as admissions in Donald Rakowski's deposition, Marigold's activities, and the differences in the work Rakowski performed under each contract. Then, analyzing the hauling contract separately, it turned to the second and third statutory requirements. Since there was no right to sell Marigold products, and

Rakowski had not addressed Marigold's contention that there was no grant of a right to distribute, the court turned to whether the term "distribution" in the statute encompassed Rakowski's trucking services. It decided that the cartage services Rakowski performed did not qualify, relying on the Wisconsin Supreme Court's decision in *Kania v. Airborne Freight Corp.*, 99 Wis.2d 746, 758, 300 N.W.2d 63 (1981), which rejected a finding of a ch. 135 dealership on similar facts.

Although Rakowski had not argued that the hauling agreement granted it a right to use Marigold's logo, trademarks, or other commercial use symbols, the court considered and rejected that possibility as well. Furnishing a plaintiff with business cards, catalogues, or other materials was not enough to confer a right to use, and the painted logo on the truck was at most incidental (and partly paid for by Marigold in any event). The finding that the rights granted were not enough for a dealership was dispositive, and so the court did not reach the "community of interest" question.

### III

Before this court, Rakowski's arguments center on the fact that it had a 10–year relationship with Marigold, in which it had invested heavily, and that this was enough to make it a "dealer" for WFDL purposes. It was a "dealer" in transportation services, and it was unceremoniously and abruptly cut off at the first—or maybe the second—whiff of labor unrest. This conclusion follows, it argues, from a functional analysis of § 135.02(3), which was designed to prevent suppliers from luring dealers into substantial firm-specific investments and then pulling the rug out from under them. (Here, of course, most of Rakowski's assets were relatively easy to convert to other uses, as is typical in the distribution business. Thus, to the extent the general purpose of the WFDL is pertinent, it tends to cut against rather than for Rakowski's position.)

Almost in passing, Rakowski alludes in its brief to the close relation between the hauling and distribution contracts and states that it operated as an integrated firm with two divisions over its 10–year involvement with Marigold. It does not, however, develop any argument to the effect that the district court erred in viewing the two contracts as distinct. It does not identify facts in the record that would demonstrate that both parties regarded the two contracts as components of a unitary economic arrangement, nor does it cite even a single case that would support reversal of the district court. Under the circumstances, we therefore take the district court's conclusion on this point as unchallenged and proceed to consider the hauling contract.

With respect to the hauling activities, both parties agree that the most pertinent decision from this court is *Moodie v. School Book Fairs, Inc.*, 889 F.2d 739 (7th Cir.1989), which considered whether a person who delivered books to school book fairs was a "dealer" within the meaning of the WFDL. Although the Wisconsin Supreme Court's decision in *Kania* focused specifically on the "community of interest" requirement of the WFDL rather than the scope of the grant, it too is helpful insofar as it offers an indication of how the Wisconsin courts would view the present arrangement (which is, after all, what matters in this diversity case).

In *Moodie*, we found that the plaintiff, Moodie, whose job was to deliver books to organized book fairs at which the defendant ("SBF") sold books to schoolchildren, was a "distributor" for purposes of the second requirement in § 135.02(3). Moodie had been designated as the exclusive area "distributor" under his written agreement with SBF; SBF required Moodie to maintain a place to store the books and a truck to haul the books, which Moodie had done; Moodie was responsible for delivering the books to area schools, setting them up on shelves, rescheduling the schools for future fairs, resupplying the schools with

books from his inventory, and picking up unsold books; and Moodie used business cards and miscellaneous other materials printed with the SBF trademark.

Rakowski sees no distinction between Moodie's activities and its own; like Moodie, it is a firm that transports goods from one place to another, at the request of the firm that owns (or produces) the goods. But it overlooks a number of significant differences in the undisputed facts here and in Moodie's situation. It may also be worth noting that the proper characterization of the arrangement when the facts are undisputed presents a question of law, under both *Kania* and *Moodie. Kania*, 99 Wis.2d at 762–63, 300 N.W.2d 63; *Moodie*, 889 F.2d at 743.

■ The oral agreement (the existence of which is not a subject of controversy) did not purport to make Rakowski the Chicago-area distributor of Marigold products. Even now, Rakowski is reluctant so to label itself; preferring instead to say that it is a dealer in trucking services rather than a dealer in Marigold's dairy products. Although the name the parties give a relationship is not controlling, it may be considered as evidence of how they perceived it. See *Moodie*, 889 F.2d at 744 n. 7. Unlike Moodie, Rakowski was not required to purchase trucks or to build storage facilities in order to satisfy the agreement, even though Rakowski found it convenient to do so. As far as the record shows, Marigold would have been equally satisfied if Rakowski had leased its trucks and facilities, as long as the products reached its customers in a timely and safe manner. By making the capital expenditures it did, Rakowski was able to increase its profits at the same time as it served Marigold more effectively. Perhaps most important, unlike Moodie, Rakowski's responsibilities under the hauling contract were limited to transporting Marigold products to Marigold's customers. Rakowski did not maintain its own inventory of Marigold's products, place Marigold products on customer shelves, monitor customer inventories, or schedule future deliveries. In short, Rakowski's services were much more like the strictly limited cartage services involved in *Kania*, where the Wisconsin Supreme Court rejected a finding of "dealership," than they were like the more extensive relationship in *Moodie*.

■ Our conclusion that Rakowski was not a "dealer" for purposes of the WFDL does not, of course, mean that we are unaware of the hardship Marigold's action inflicted on the small company. Nevertheless, in Wisconsin as in other states, service contracts may be terminable at will unless the agreement specifies otherwise or unless some specific statute changes that background rule. See generally *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 269 (7th Cir.1995) citing *Forrer v. Sears, Roebuck & Co.*, 36 Wis.2d 388, 153 N.W.2d 587 (1967). Termination at will often has harsh consequences for the ousted party, whether within the context of an employment relationship, an agency, or a more general contract for services, but that is simply a risk of doing business that both parties must address. Here, Rakowski enjoyed the benefits of a profitable relationship for ten years, only to find its business gone almost overnight. We hold here only that the district court correctly rejected its effort to invoke the protective measures of the WFDL, and we AFFIRM the judgment of that court.

RIPPLE, Circuit Judge, dissenting.

The issue in the case is whether the plaintiff, Rakowski Distributing ("Rakowski"), is a dealer for purposes of the Wisconsin Fair Dealership Law. In examining this issue on a motion for summary judgment, the district court focused only on the "hauling" contract between the plaintiff and defendant, and held that the "distribution" contract should not be considered in determining whether Rakowski is a "dealer" within the meaning of the Wisconsin Fair Dealership Law. Because I believe that the district court erred in considering only the hauling contract, I conclude that

summary judgment is inappropriate. Accordingly, I must part company from my colleagues and respectfully dissent from their affirmance of the judgment of the district court.

The majority avoids this issue by concluding that Rakowski's argument on appeal is so sparse that we are justified in taking "the district court's conclusion on this point as unchallenged" and limiting our inquiry to "the hauling contract." Op. at 505. I do not think we can ignore Rakowski's submission. In a section of its brief titled "One firm, or two, or who cares?"—Rakowski initially cites the deposition of Rakowski's CPA, who stated that Rakowski "was all one corporation." Its brief also states:

> Much was made of the fact that there were two distinct dimensions to Rakowski's relationship to Marigold, "hauling" and "distributing," and that Marigold only terminated the "hauling" dimension.

> On the record evidence, Rakowski, in its 10-year relationship with Marigold, functioned as an integrated, single, ongoing firm, with one profitable division, "hauling," and a division that operated at a loss, "distributing." The overall business of the firm was to truck Marigold products to market. . . . When the hauling function was pulled, Rakowski ceased to function as a going concern. So the total physical capital investment of $750,000 was an investment supported by the terminated hauling relationship.

Appellant's Brief at 15–16. Notably, the majority acknowledges the interdependence of the hauling and distribution contracts when it states that Rakowski "maintained [the distribution] contract because it believed that if it canceled that aspect of its relationship with Marigold it would also lose the hauling business." Op. at 506.

The majority's failure to consider the totality of the economic relationship between Rakowski and Marigold substantially undercuts the protection afforded by the Wisconsin Fair Dealership Law. The stat-

ute states that a dealership means "a contract or agreement." Wis. Stat. § 135.02(3). The use of both terms in the disjunctive is a strong indication that the Wisconsin legislature sought to protect economic relationships broader than a single contract. However, even if we assume that the two terms have, within the context of this statute, the same meaning, it is clear that the entirety of the parties' economic relationship must be considered. Wisconsin precedent and scholarly commentary make clear that, rather than consider only the hauling contract, the entire relationship ought to have been evaluated. That treatise states:

> Since the statutory definition of dealership begins with the words " 'Dealership' means a contract or agreement," it does not seem overly literal-minded to conclude that a dealership is indeed a type of contract or agreement. It is also helpful, however, to think of a dealership as a type of relationship. It is a relationship consisting of a contract or agreement, and of shared financial interest and interdependence sufficient to create a community of interest between the parties.

> Thinking of the dealership as a relationship rather than simply as a contract or agreement brings into clearer focus the fundamental issue of who should be protected by the statute. The answer to that question turns on factors inherent in the parties' relationship. . . . One will see these factors if one looks at the parties' *entire relationship*; one may miss them if one looks only at the parties' contract.

Michael A. Bowen & Brian E. Butler, The Wisconsin Fair Dealership Law § 4.6, at 4–9 (1998) (emphasis added).

Bowen and Butler rely upon *Ziegler Co., Inc. v. Rexnord, Inc.*, 139 Wis.2d 593, 407 N.W.2d 873 (1987), *reconsidered on other grounds*, 147 Wis.2d 308, 433 N.W.2d 8 (1988), in support of this entirety-of-the-relationship approach. In *Ziegler*, the

**510**

Wisconsin Supreme Court, in determining whether the plaintiff was a dealer, considered investments made by the plaintiff which were not required by the terms of the contract. *See id.* at 880–81 & n. 11. Instead of looking only to the contract, the court looked to the relationship as a whole. *See id.* The argument for looking at the entirety of the relationship is, of course, especially strong in this case because, as the majority notes, each party understood that the continuation of their relationship was premised on the existence of both contracts.

When the distributing side of the business is considered as part of the relationship, it is clear that summary judgment should not be granted. With respect to the distributing aspect of their relationship, Rakowski sought business for Marigold and was paid based on Marigold's profits and shared the risk of loss. There is therefore a triable issue of fact regarding whether Rakowski was Marigold's dealer. By focusing solely on the hauling aspect of the parties' relationship, while admitting at the same time that the actual relationship between the parties was a dual one of hauling and distributing, the majority bases its decision on an economic relationship that is purely hypothetical. The plaintiff, however, brought us a real case with very real economic consequences. It has a right to a decision on its real case, not on the court's hypothetical one. Accordingly, I respectfully dissent.