**Beverly BOWERS, Plaintiff,**

v.

**RADIOLOGICAL SOCIETY OF NORTH AMERICA, INC., and Dana Davis, individually, Defendant.**

No. 98 C 7431.

United States District Court,
N.D. Illinois,
Eastern Division.

March 18, 2000.

---

Penny Nathan Kahan, Penny Nathan Kahan and Associates, Ltd., Chicago, IL, for Beverly Bowers, plaintiff.

Michael G. Cleveland, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Radiological Society of North America, Dana Davis, individually, defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Beverly Bowers worked for the Radiological Society of America (the "Society") from 1994 to 1998, when she was fired. She claims that Dana Davis, her immediate supervisor, sexually harassed her on and off throughout the entire period, making passes that Bowers rejected, brushing against her physically in inappropriate ways, using foul and graphic sexual language, cracking dirty jokes and so forth. Bowers was fired on February 27, 1998. On May 1, 1998, she filed discrimination charges with the EEOC. On November 19, 1998, she filed this sexual harassment lawsuit against the Society and Davis.[1] The Society moves for partial summary judgment on all of Bower's factual claims prior to July 5, 1997, arguing that these are time barred. I deny the motion.

### I.

In order to bring a Title VII discrimination suit in federal court, a plaintiff must have filed a charge with the EEOC detailing the basis of the allegations within 300 days of the date of its occurrence. 42 U.S.C. § 2000e–5(e)(1); *EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 970 (7th Cir.1996). When she fails to do so, the complaint is untimely. *Hentosh v. Herman M. Finch University of Health Sciences/the Chicago Medical School*, 167 F.3d 1170, 1173–74 (7th Cir.1999). The factual claims the Society wants me to throw out occurred outside the 300–day limit if that is computed as the Society wants.

However, Ms. Bowers invokes the continuing violation doctrine to bring these events back into her lawsuit. On this doctrine, conduct that falls outside the limitations period is actionable if it is linked with related acts that fall within the period, and the acts are then treated as one continuous act ending within the limi-

tations period. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir.1992). The continuing violation doctrine is applicable if the conduct can only be recognized as actionable in the light of later events that occurred within the limitations period. *Filipovic v. K & R Express Systems, Inc.*, 176 F.3d 390, 396 (7th Cir.1999). The justification for treating a series of separate violations as a continuing violation is that the plaintiff had no reason to believe that she had been subject to actionable discrimination when the events outside the limitations period occurred. *Selan v. Kiley*, 969 F.2d 560, 565–66 (7th Cir.1992).

The Society argues that the continuing violations doctrine does not apply in this case because Bowers believed that she was being sexually harassed as early as 1993. As evidence of Bowers' beliefs, it offers the following:

1. Bowers said that Davis made a pass at her in 1993 while they were working for a different employer, the American Health School Association (the "Association"), and when Davis offered Bowers the job working for the Society, Bowers sought assurances that her rejection of this unwanted attention would not affect her employment at the Society. Bowers wrote in her journal on February 23, 1993 that she had been told that Davis' conduct "could be sexual harassment."

2. Bowers testified in her deposition that in July 1995, after receiving a poor performance evaluation from Davis, she told Davis that she did not appreciate being sexually harassed.

3. Bowers stated that in December 1995, she kept a copy of a sexually graphic document that Davis created as evidence of discrimination.

4. On April 18, 1996, Bowers wrote in her journal, "I have it in mind that if Dana goes through what I fear, I will sue [the Society]."

---

1. Davis has been dismissed from this action as a party.

5. On April 26, 1996, Bowers wrote in her journal that Davis was "crude," made "sexual harassing comments," and so forth. Bowers had done some "searching ... [into] court cases on discrimination.... It seems that people have won cases even when they don't have as much evidence as I do about my situation. I could get Dana on all of these issues right now!"

6. On June 5, 1996, Bowers wrote in her journal: "If [my performance review] is bad again, I'll have to submit another rebuttal and consider officially registering. a sexual harassment complaint against [Davis]."

The Society maintains that this evidence shows that Bowers knew from before it hired her, and knew all along during her employment, that she was being sexually harassed, and therefore she has no continuing violation to save the events outside the limitations period.

■ The clock started ticking for Bowers' claims when a reasonable person would have known that she had a cause of action for sexual harassment, that is, when the basis for her lawsuit actually accrued, *Thelen v. Marc's Big Boy Corporation,* 64 F.3d 264, 267 (7th Cir.1995)("The plaintiff's action accrues when [s]he discovers that [s]he has been injured."); *Artis v. Hitachi Zosen Clearing, Inc.,* 967 F.2d 1132, 1144 (7th Cir.1992), and she would have reasonably realized this—not when she might have wrongly believed that it had accrued. *See Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999) ("Where ... it is evident long before the plaintiff sues that she was a victim of *actionable* harassment, she 'cannot reach back and base her suit on conduct that occurred outside the statute of limitations.'") (emphasis added). But it must have been

evident to a reasonable person that the harassment was in fact serious enough to be actionable. A complaint "would [have] be[en] premature if no cause of action [had] accrued," *Wilson v. Giesen,* 956 F.2d 738, 743 (7th Cir.1992) (selective prosecution context), and so far as the Society has shown no cause of action accrued until Bowers was fired on February 27, 1998.

■ The law here is a bit tricky, but the key point is that it is the *actual,* and not the imagined, accrual of the cause of action that triggers the continuing violation doctrine.[2] It would be neither fair nor in accord with the law to say that if Bowers failed to file charges preparatory to bringing a lawsuit that she would have lost on a motion to dismiss or summary judgment because her cause of action had not accrued that she must later lose the claims on which she could not then have sued if the harassment subsequently did indeed ripen into actionable behavior. That would be a genuine Catch–22: heads, defendant wins, tails, plaintiff loses. The law is not so Kafkaesque.

■ The logic of the continuing violation doctrine reverses the normal stances of the parties. A defendant who wishes to argue that the events it wants excluded fall outside the limitations period has to argue that, if the facts were as the plaintiff said, they would have constituted actionable harassment, and that the plaintiff unreasonably failed to complain when her cause of action accrued. Meanwhile a plaintiff who wants to bring in events under the continuing violation doctrine has to argue that they did not constitute actionable harassment, and could only later be recognized as forming a pattern of illegal conduct. In short, the defendant must say

2. The Seventh Circuit put it: "The plaintiff may not base her ... suit on conduct that occurred outside the ... limitations [period] unless it would have been unreasonable to expect the plaintiff to sue before the statute ran on that conduct, as in a case in which the conduct could constitute, or be recognized, as actionable harassment only in the light of

events that occurred later, within th[at] period." *Galloway v. G.M. Serv. Parts Operations,* 78 F.3d 1164, 1167 (7th Cir.1996). But if the conduct could not constitute or be recognized as constituting a violation because it was not one, it would not be reasonable for the plaintiff to sue.

"We were really awful, but it's too late"; while the plaintiff must say: "Oh, they weren't that bad—until less than 300 days before I filed." The law does put the defendant opposing the application of the continuing violations doctrine in a delicate position, but that is because the alternative is to put the plaintiff invoking the doctrine in an impossible position.

■ Here, the defendant fails to make the necessary arguments, while the plaintiff does argue as she should. The Society does not argue that Bowers' cause of action accrued, or even that, if the facts were as she claimed, then her cause of action would have accrued at some earlier date than her firing, and that, therefore, she should have reasonably known to complain at the time. It argues, not wholly accurately, that she subjectively *believed* that she had been harassed from the very start or even before. (I shall return to this.) However, as explained, the standard is objective, not subjective: when a reasonable person would have recognized that she had been injured in a way that constituted actionable sexual harassment. The Society's claims about Bower's subjective beliefs are therefore irrelevant in the absence of argument that those alleged beliefs were reasonable and accurate. The Society has failed to raise this argument and so has waived it.

However, even if I were to be more generous towards the party moving for summary judgment than the law strictly permits, and take the Society to have argued as it should have, it fails to establish this point with the evidence it brings forward. · Going through the Society's arguments as numbered above:

■ 1'. *No reasonable person would* imagine that whatever happened between Bowers and Davis at the Association would create a basis for complaint about the Society. Moreover, a single rejected pass is generally insufficient for a sexual harassment complaint. *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993) (Not sexual harassment to ask plaintiff for dates on repeated occasions, place signs reading "I love you" in her work area, and attempt twice to kiss her, because the incidents were too isolated and insufficiently severe). According to the Society, Bowers said only that she had been told that such conduct might be harassment.

2'. Bowers' June 1995 statement to Davis, after receiving a poor performance review, that she "did not appreciate being sexually harassed" is the first instance the defendant lists of conduct during their mutual employment at the Society. However, the only previous or contemporaneous reference to sex or harassment that the defendant cites that might bring the poor performance review with the scope of Title VII is the conduct that occurred at the Association, and this is irrelevant, as explained.

■ 3'. With Bower's statement that she retained as evidence of discrimination, in December 1995, a sexually graphic document that Davis created, the defendants offer for the first time something that looks like it might be part of a basis for a sex harassment complaint against the Society. However, all that is offered here is a single isolated act, and "a single, isolated such comment could not reasonably be thought to constitute sexual harassment." *Galloway,* 78 F.3d at 1167.

4' & 6'. Bowers' journal notation of April 18, 1996, "I have it in mind that if Dana goes through what I fear, I will sue [the Society]," suggests the opposite of what the defendant urges, that in fact Bowers thought at that time she did not yet have a cause of action and would not unless Davis went "through with what [Bowers] fear[ed]." Likewise with Bowers' journal notation of June 6, 1996. "If [my performance review] is bad again, I'll have to submit another rebuttal and consider officially registering a sexual harassment complaint against [Davis]."

5'. The defendant's best piece of evidence is Bowers' journal notation of April 26, 1996, where Bowers writes about Davis' crudeness and "sexually harassing comments," and says: "It seems that people have won cases even when they don't have as much evidence as I do about my situation. I could get Dana on all of these issues right now!"

If I were to view this evidence in a light favorable to the defendant, I might conclude that Bowers' limitations period began on this date. However, on a motion for summary judgment, I view the facts and the record in the light most favorable to Bowers, the non-movant. *Parkins v. Civil Constructors of Il., Inc.,* 163 F.3d 1027, 1032 (7th Cir.1998). So viewed, I observe the context of the comment. It is sandwiched in between the comments of April 18 and June 6, 1996, which suggest that Bowers thinks she did not have enough to obtain legal relief. I therefore construe the remark about being "able to get Dana on all of these issues right now" as an exaggeration, a overstatement due to excitement at finding case law that might, if the situation developed, warrant legal action.

The Society, then, fails to argue that it had been long evident that if her allegations were true that Bowers would have indeed been "a victim of *actionable* harassment," *Hardin,* 167 F.3d at 344, before she was fired. Even if I were to treat its arguments about Bowers' subjective beliefs as arguments about the objective reasonableness of correct beliefs that she had a cause of action, they fail to establish any such thing. I must therefore deny the Society's motion for summary judgment on Bowers' claims based on events prior to July 5, 1997.

### III.

There is another basis for denying the Society's summary judgment motion that turns on the way the continuing violation doctrine interacts with the two main approaches to a sexual harassment lawsuit. Under a "hostile environment theory," a plaintiff may sue because of severe and abusive harassment that unreasonably interferes with an individual's work performance or creates an intimidating, hostile, or offensive working environment. *Doe v. R.R. Donnelley & Sons, Co.,* 42 F.3d 439, 443 (7th Cir.1994). Under a "quid pro quo" theory, an employee may also sue if tangible employment benefits are conditioned upon compliance with a harasser's sexual demands. *Bryson v. Chicago State Univ.,* 96 F.3d 912, 915 (7th Cir.1996). The Supreme Court has held that "[t]he terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 751, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998).

Here, Bowers was subjected to crude and boorish conduct, and additionally, fired. The Society fails to argue, or to present evidence warranting the conclusion, that Davis's complained-of conduct outside the limitations period amounted to "the kind of ... attentions that can make the workplace hellish for women," *Baskerville v. Culligan Int'l,* 50 F.3d 428, 430 (7th Cir.1995), which would have given a reasonable person a correct belief that the conduct was serious enough to be actionable at the time. However, behavior that by itself was not extreme or frequent enough to trigger a hostile work environment claim may become actionable if it is capped off with quid pro quo harassment. As I have said elsewhere, "quid pro quo harassment is neither necessary nor sufficient for a hostile work environment claim. But, in the appropriate circumstances, it may help make other conduct severe enough to constitute a hostile work environment." *Faccio–Robert v. Empress River Casino,* 80 F.Supp.2d 918, 920 (N.D.Ill.2000).

■ This is one of those circumstances. Davis' unwanted passes, salacious documents, crudeness, and inappropriate comments, even if by themselves merely manifesting the lack of tact or sensitivity that is "too commonplace in today's America ... to be classified as discriminatory," *Minor v. Ivy Tech State College,* 174 F.3d 855, 858 (7th Cir.1999), could later become recognizable as actionable hostile environment harassment after Davis allegedly had Bowers fired when she did not accede to those boorish importunities. Since "claims that raise a genuine issue of material fact as to the existence of a hostile environment involve allegations of continuing violations," *Draper v. Coeur Rochester, Inc.,* 147 F.3d 1104, 1108 (9th Cir.1998) (*citing Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 66–67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)), in these circumstances, the events outside the limitations period come in.

■ In any event, the conduct outside the limitations period, and indeed, even the behavior that occurred at the Association, is evidence of illegal discriminatory motive that supports a quid pro quo harassment case. If credited, this evidence could lead a rational jury to believe that Bowers was fired because she would not give in to Davis' request, rather than for any nondiscriminatory reason.

The Society's motion for summary judgment on Ms. Simon's claims before July 5, 1997 is DENIED.