Leonard JUNIEL, Sr., Plaintiff–
Appellant,

v.

PARK FOREST–CHICAGO HEIGHTS,
Illinois, School District 163,
Defendant–Appellee.

No. 02–1139.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 2002.

Decided Sept. 19, 2002.

Before BAUER, KANNE, WILLIAMS,
Circuit Judges.

## ORDER

Leonard Juniel, an African American employee of the Park Forest–Chicago Heights, Illinois School District 163 ("District"), sued the District under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, as well as 42 U.S.C. § 1981 and 42 U.S.C. § 1983, for terminating him based upon race. The district court granted summary judgment to the District and Juniel appeals. We affirm.

## BACKGROUND

Juniel began working for the District as Director of Technology in February 1996. He was not a certified teacher, but rather an administrator working under an individual employment contract that waived all tenure rights. As Director of Technology, Juniel was responsible for many aspects of the electronic data-processing needs of the District.

In March 1998 the District's Board of Education began implementing a RIF in an attempt to cut $300,000 from its budget. The Board was composed of four African Americans and three caucasians. The District's Superintendent, Dr. Elizabeth Reynolds (an African American) recommended to the Board that Juniel's position be eliminated, and the Board implemented that suggestion. In total seventeen employees were terminated as part of the RIF, twelve of them caucasians and five African Americans.

Juniel was notified of his termination on March 30, 1998, and received a certified letter discussing the non-renewal of his position on April 10, 1998. Juniel was honorably dismissed effective May 30, 1998. At that time Reynolds informed Juniel that the elimination of his position was not due to poor performance. But the District later claimed that Juniel's failure to develop a district-wide technology plan, failure to publish a technology newsletter, and failure to spend sixty percent of his time meeting with staff and students contributed to the Board's decision to eliminate his position.

Following Juniel's termination, the District distributed his former duties to a number of other employees. Superintendent Reynolds assumed the majority of Juniel's responsibilities. Most of the other duties were assigned to Mike Nicolai and Bob Thomas, two white employees. The District no longer employs a Director of Technology.

On April 21, 1999, Juniel filed a charge with the Equal Employment Opportunity Commission, and he received a right-to-sue letter on December 29, 1999. On March 24, 2000, Juniel filed his *pro se* complaint in this action alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as well as 42 U.S.C. § 1981 and 42 U.S.C. § 1983. The district court granted two motions for summary judgment in favor of the District and Juniel filed a timely appeal.

## DISCUSSION

### 1. Juniel's Title VII Claim.

On appeal Juniel contests the district court's conclusion that he failed to file his race discrimination charge within the 300–day window permitted under Title VII. *See* 42 U.S.C. § 2000e–5(e) (charge must be filed with EEOC "within three hundred days after the alleged employment practice occurred"). The 300–day statute of limitations begins to run on the date that the employee is notified of the adverse employment decision. *Shanoff v. Ill. Dep't of Human Servs.*, 258 F.3d 696, 701 (7th Cir.2001); *Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1306 (7th Cir.1998). The latest date on which Juniel

could be said to have received actual notice was April 10, 1998, which would have required him to file a charge with the EEOC by February 4, 1999. Juniel, however, waited until April 21, 1999, to raise his allegations with the EEOC.

Juniel contends that his claim did not accrue until he discovered facts that would support a charge of discrimination. Apparently his wife discovered a directory of the school district during the fall of 1998 in which two caucasians were listed as "District office technology" staff. But Juniel's claim accrued when he discovered he had been injured, as opposed to when he discovered that the injury was in violation of a law. *See Hentosh v. Herman M. Finch Univ. of Health Sci./Chicago Med. Sch.,* 167 F.3d 1170, 1174 (7th Cir.1999); *Thelen v. Marc's Big Boy Corp.,* 64 F.3d 264, 267 (7th Cir.1995). The district court interpreted Juniel's argument under the principles of equitable estoppel and equitable tolling, though he failed to explicitly discuss these theories below or raise them on appeal. The district court properly concluded that Juniel presented no evidence that the District took active steps to prevent him from bringing his charge within the allotted time, as is required to establish equitable estoppel. *See Hentosh,* 167 F.3d at 1174; *Thelen,* 64 F.3d at 267. Additionally, the court appropriately concluded that equitable tolling could not save Juniel's claim because he failed to offer a valid justification for waiting several months to file a charge of discrimination with the EEOC once discovering facts that may have supported it. *Thelen,* 64 at 268.

## 2. Juniel's § 1981 and § 1983 Claims.

Although neither party addressed the issue below, the district court disposed of Juniel's § 1981 and § 1983 claims on the basis that he had failed to establish municipal liability. *See Smith v. Chi. Sch. Re-* *form Bd. of Trs.,* 165 F.3d 1142, 1148 (7th Cir.1999). A plaintiff can establish municipal liability by showing that the alleged constitutional deprivation was caused by an individual or group with final policymaking authority. *See Brokaw v. Mercer County,* 235 F.3d 1000, 1013 (7th Cir.2000). On appeal, the District concedes that the Board of Education holds final policymaking authority, that the Board runs the District, and that the Board decided to terminate Juniel. The District's concession that the Board itself terminated Juniel acting as the final policymaker renders the role of Superintendent Reynolds irrelevant. Consequently, this case is unlike those involving delegation of authority or ratification in which municipal liability may be at issue. *See, e.g., Kujawski v. Bd. of Com'rs of Bartholomew County, Ind.,* 183 F.3d 734, 737 (7th Cir.1999).

But the district court was correct to grant summary judgment on Juniel's § 1981 and § 1983 claims because there is no evidence to warrant submitting the issue of intentional discrimination to a jury. Juniel does not contend that the record contains any direct evidence of discrimination, so he must establish a *prima facie* case of race-based discrimination using the burden-shifting approach. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To do this, Juniel must show that 1) he is a member of a protected class; 2) he performed his job duties satisfactorily; 3) he suffered an adverse employment action; and 4) the District treated similarly situated employees outside his protected class differently. *Id.* at 802; *Brummett v. Lee Enters., Inc.,* 284 F.3d 742, 744 (7th Cir. 2002). If Juniel established a *prima facie* case, the burden then shifted to the District to provide evidence of a legitimate, non-discriminatory reason for terminating him. *Simmons v. Chi. Bd. of Educ.,* 289 F.3d 488, 492 (7th Cir.2002). If the Dis-

trict succeeded in providing such evidence, the burden then shifted back to Juniel to prove that the District's articulated reason was pretextual. *Id.*

■ Juniel failed to establish a *prima facie* case because he did not introduce evidence that similarly situated employees not of his race were treated differently. It is Juniel's burden to point to specific similarly situated employees to establish this element of his *prima facie* case. *Bellaver v. Quanex Corp.,* 200 F.3d 485, 494 (7th Cir.2000). As his only example of a similarly situated employee, Juniel cites Karen Eisenbart, the District's Grant Administrator. But Eisenbart performed duties entirely different from those for which Juniel was responsible. Moreover, the RIF on a global level shows no evidence of discrimination; indeed, twelve caucasians and six African Americans were terminated.

Nor did the District hire a new employee to fill Juniel's duties, which could potentially support an inference of discrimination. *See Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 454 n. 1 (7th Cir.1999). Instead, it spread his responsibilities among a number of individuals, largely to the African American Superintendent Reynolds, while a few remaining duties were assigned to two white employees. But the two white employees were not replacement administrative personnel; rather, one worked under a part-time contract and the other was a teacher with tenure rights, unlike Juniel who worked under an administrative contract.

■ Even if Juniel had established a *prima facie* case, he failed to rebut the District's proffered reason for his termination—that the decision was part of a cost-cutting RIF. Although his argument on appeal is unclear, Juniel appears to assert that some negative statements about his performance made by District personnel conflict with the District's RIF explanation. But Juniel can rebut the District's stated reasons only by showing that they had no basis in fact, *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996), or that the District did not "honestly believe" in the nondiscriminatory reasons it offered, *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 733 (7th Cir.2001). The District's articulated reason for the RIF—that there was no need for a Director of Technology position—does not conflict with any alleged statements that Juniel's failures to perform some of his duties contributed to the decision to eliminate the position.

AFFIRMED.