**Gloria Pagan CAMACHO, et al., Plaintiffs,**

v.

**CUTLER HAMMER OF PUERTO RICO, Defendant.**

**CIV. No. 00–1298(SEC).**

United States District Court, D. Puerto Rico.

Nov. 9, 2001.

---

Lizzie M. Portela, Del Toro & Santana, San Juan, PR, for Plaintiffs.

Jose A. Gallart, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court is Defendant's motion for summary judgment (Docket # 25), which was duly opposed (Docket # 32). For the reasons stated below, Defendant's motion is GRANTED.

### Procedural Background

■ Before addressing the merits of the pending motion, the Court shall treat two procedural matters. In their original motion to dismiss, Defendants argue that Plaintiff did not timely file her administrative claim with the EEOC and that therefore, this Court lacks subject matter jurisdiction. Normally, a motion to dismiss for lack of jurisdiction is brought pursuant to Federal Rule 12(b)(1). However, the question of whether an employment discrimination plaintiff is precluded from bringing suit in federal court because of an untimely administrative claim is not a jurisdictional issue. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Thus, Defendant's motion should have been premised upon Rule 12(b)(6). *Supermail Cargo, Inc. v. United States,* 68 F.3d 1204, 1206 n. 2 (9th Cir.1995).

This leads to the second procedural issue, which was the subject of the Court's Order filed on February 26, 2001. (Docket # 19). In that Order the Court noted that both sides had provided the Court with documentary evidence that was critical to deciding the issues raised in Defendant's motion. We then explained that if "matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Maldonado v. Dominguez,* 137 F.3d 1, 5 (1st Cir.1998); *see also Collier v. City of Chicopee,* 158 F.3d 601, 602–03 (1st Cir. 1998). Therefore, we decided to convert Defendant's motion to a motion for summary judgment, and allowed the parties time to supplement their filings. Having received all the materials the parties deem pertinent to a motion for summary judgment, we shall proceed in accordance with Rule 56.

### Summary Judgment Standard

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, to-

gether with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Rogan v. City of Boston* 267 F.3d 24, 26–27 (1st Cir.2001); *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28 (1st Cir.1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 3d § 2725, p. 401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine," there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. *U.S. v. One Parcel of Real Property,* 960 F.2d 200, 204 (1st Cir.1992); *see also Boston Athletic Assn. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Medina–Munoz v. R.J. Reynolds Tobacco,* 896 F.2d 5, 8 (1st Cir.1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law. *Morris v. Government Development Bank of Puerto Rico,* 27 F.3d 746, 748 (1st Cir. 1994). "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, *supra,* § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial. It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Martinez*

*v. Colon,* 54 F.3d 980, 983–984 (1st Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence. *Casas Office Machines, Inc. v. Mita Copystar America, Inc.,* 42 F.3d 668 (1st Cir.1994). Summary judgment "admits of no room for credibility determinations, [and] no room for the measured weighing of conflicting evidence such as the trial process entails." *Id. (citing Greenburg v. Puerto Rico Maritime Shipping Authority,* 835 F.2d 932, 936 (1st Cir.1987)). Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. *Casas Office Machines,* 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the non-moving party's case," *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994); the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions." *Lawton v. State Mutual Life Assurance Company of America,* 101 F.3d 218, 223 (1st Cir.1996). Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form sufficient to limn a trialworthy issue … Failure to do so allows the summary judgment engine to operate at full throttle." *Id.; see also Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); *Medina–Munoz,* 896 F.2d at 8, *quoting Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense

that it limns differing versions of the truth which a factfinder must resolve.")

**Factual Background**

On March 25, 1974, Plaintiff Gloria Pagan Camacho ("Plaintiff") commenced employment with Defendant Cutler Hammer ("Defendant"). (Docket # 32, ex. A at 9–10). At the time of her hiring, Plaintiff was 22 years old, and began her tenure with Defendant as a welding operator. (Docket # 32, ex. A at 10–11).

Near the end of 1996 and early 1997, Cutler Hammer began a reorganization process of the operations conducted at the plant where Plaintiff worked. (Docket # 25, ex. C, ¶ 9). On January 8, 1997, Plaintiff received a letter informing her that her position was being transferred to the Arecibo plant. The letter requested that Plaintiff confirm whether she would agree to accept a transfer to the plant in Arecibo. (Docket # 25, ex. D). Plaintiff declined any relocation option. (Docket # 25, ex. A at 26).

On June 20, 1997, after declining the transfer to Arecibo, Plaintiff was "laid-off." (Docket # 25, ex. C). Between June and July of 1997, Defendant had a temporary production need at the Arecibo plant, and a number of employees were recalled for a maximum term of three (3) months. (Docket # 25, ex. C, ¶ 12). Plaintiff was asked to participate in the temporary recall, and she accepted the offer of employment, which lasted from July 8, 1997 until September 29, 1997. (Docket # 25, ex. G). At the end of this temporary employment period, Plaintiff was "laid-off" once again. (Docket # 25, ex. H).

On September 18, 1998, Plaintiff Gloria Pagan Camacho ("Pagan") filed discrimination charges before the Anti–Discrimination Unit ("ADU") of the Puerto Rico Department of Labor. (Docket # 25, ex. I). On December 29, 1998, Pagan filed new charges before the ADU and the Equal Employment Opportunity Commission ("EEOC"). (Docket # 25, ex. J). In such charges, Plaintiff alleged that her employer, Defendant Cutler Hammer, discriminated against her due to her age. Upon requesting and obtaining a right-to-sue letter from the EEOC, Plaintiff, along with her spouse and the conjugal partnership composed between them, filed the present action against Cutler Hammer, pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and Title VII of the Civil Rights Act of 1964. Plaintiffs also invoke the Court's supplemental jurisdiction pursuant to the laws of the Commonwealth of Puerto Rico, to wit: Law Nos. 80 and 100 of the Puerto Rico Civil Code.

**Analysis**

The parties have raised and briefed two issues in their motions. First, whether or not Plaintiff filed her claim of discrimination before the administrative investigative body in a timely manner. Second, assuming that Plaintiff's claim was not filed in a timely fashion, whether or not an equitable doctrine can be utilized to justify her tardiness.

**1. The Accrual of Plaintiff's Claim**

Plaintiff brings federal claims under ADEA and Title VII. Both of these statutes require plaintiff to first bring a timely administrative claim before filing in federal court. *See* 29 U.S.C. § 626(d); 42 U.S.C. § 2000e–5(e)(1). In "deferral jurisdictions," such as Puerto Rico, employees must file charges of unlawful age discrimination in employment with the EEOC within 300 days "after the alleged unlawful practice occurred." 29 U.S.C. § 626(d); *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278 n. 4 (1st Cir.1999); *American Airlines Inc. v. Cardoza–Rodriguez*, 133 F.3d 111 (1st Cir.1998). "To deter-

mine the timeliness of the employee's complaint, we must specifically identify when the unlawful practice that the employee claims violated the ADEA occurred." *American Airlines*, 133 F.3d at 111. Moreover, "when an employee knows that he has been hurt and also knows that his employer has inflicted the injury, it is fair to begin the countdown toward repose. And the plaintiff need not know all the facts that support his claim in order for countdown to commence." *Morris v. Government Development Bank of Puerto Rico*, 27 F.3d 746, 750 (1st Cir.1994).

▮▮▮ Thus, Plaintiff had to file her claim within 300 days of the alleged discrimination against her. The general rule is that an employer's action starts the running of the limitations period for the filing of an administrative claim if that action has negative, concrete consequences for the plaintiff and if the plaintiff is aware or should have been aware of the consequences. *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 49 (1st Cir.1999); *Morris*, 27 F.3d at 750. Once the employer's decision is made, and communicated to the employee, the limitations period commences. *Morris*, 27 F.3d at 750. This countdown commences upon the employee's notice of the decision, even though the employee may not know all of the facts that support the claim. *American Airlines*, 133 F.3d at 123 (*citing Morris*, 27 F.3d at 750).

Defendant makes the following contentions regarding the commencement of the 300 day filing period. First, Defendant claims that since January 7, 1997, Plaintiff knew that if she did not accept the transfer she would be laid off. Therefore, an argument can be made that the filing period began on that date. Second, Defendant argues that even if Plaintiff's notice of the possibility of lay-off was not sufficient to commence the limitations period, Plaintiff certainly suffered a concrete and tangible adverse employment action on June 20, 1997 as a result of her lay-off. Finally, Defendant contends that even if Plaintiff is given the benefit of the doubt as to her ignorance of the fact that she suffered an adverse employment action, the most that one could stretch the accrual date would be September 29, 1997, the date of the second lay-off. Thus, Defendant argues that regardless of which of the three dates is used, Plaintiff's filing in September of 1998 is time-barred.

Plaintiff, on the other hand, contends that she had no reason to know or suspect any discrimination in the reasons provided for her termination. This is true because she was not fired for cause, but rather laid off under the false, but believable pretense, of a reduction in the volume of production. Plaintiff claims that she believed that Defendant was reducing its work force, that she was being laid-off, and that she would be recalled as soon as the first opening became available. From these facts, Plaintiff argues that she did not have any knowledge of the true discriminatory nature of her discharge and did not have the necessary facts to support an age discrimination claim before the ADU or EEOC until she learned of the hiring of the "younger employees" in September of 1998. Thus, Plaintiff concludes that her September 1998 filing was timely because it was shortly after she gained the requisite knowledge to support her claim.

▮▮▮ Our first task is to determine whether or not Plaintiff's filing was within the 300 day statute of limitations. And we will begin our analysis with Plaintiff's argument that her cause of action accrued when she learned that her position had been taken by "younger employees." In rejecting this argument on the accrual of her cause of action, we find the case of *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264 (7th Cir.1995), on point and persuasive.

In *Thelen*, like here, the plaintiff argued that the "discovery rule" should extend the accrual date of his claim until the time he learned that he might have been a victim of age discrimination. In that case, the plaintiff claimed that this occurred when his supervisor advised him that a younger worker had taken his position. In rejecting the discovery rule reasoning, the Court observed that "Thelen has confused the discovery rule with the doctrines of equitable tolling and equitable estoppel. A plaintiff's action accrues when he discovers that he has been injured, not when he determines that the injury was unlawful." *Id.* at 267. The Court then concluded that "Thelen's injury was his termination. He discovered his injury on November 9, 1987, when [he was informed that] he was to be terminated, effective December 15, 1987. Thus the statute of limitations on Thelen's action began on November 9." *Id.*

The First Circuit has also rejected a similar contention on the issue of accrual:

> The rule in an employment discrimination case is that the limitations period begins to run when the claimant receives unambiguous and authoritative notice of the discriminatory act (which is another way of saying that the period begins to run when the employee learns of the adverse employment action). This initiative rests on the notion that appellant's claim did not accrue until he knew of both the suspension and the defendant's discriminatory animus. Stated a different way, appellant contends that his cause of action existed in a state of suspended animation until he became aware of the racial and political motives behind the adverse employment decision. We cannot countenance this contention. It is by now well established that, in employment discrimination actions, limitations periods normally start

to run when the employer's decision is made and communicated to the affected employee.

*Morris*, 27 F.3d at 750.

■ We similarly reject Plaintiff's "discovery rule" argument in the case at bar. Here, the evidence shows that on January 7, 1997, Plaintiff was notified of the consolidation process and of her option to receive a transfer to the Arecibo plant or being laid-off. On January 17, 1997, Plaintiff declined the offer to be transferred. Thus, by January of 1997, Plaintiff knew that she would be placed on lay-off status, and it was at that time that the tangible and concrete employment decision was communicated to Plaintiff. However, even if we were to assume that despite the various means used by Defendant to inform Plaintiff of the reorganization process and her future employment opportunities, Plaintiff surely felt a concrete and tangible consequence on June 20, 1997 when she was laid-off. Finally, we agree with Defendant that even if Plaintiff remained ignorant of the fact that she suffered an adverse employment action, the most she could stretch the accrual date would be September 28, 1997, the date of the second lay-off. This is true especially since Plaintiff's complaint alleges she "held said position until September 28, 1997 when she was unlawfully discharged by defendant, discriminatorily because of her age."

Pursuant to the ADEA as interpreted in deferral jurisdictions such as Puerto Rico, Plaintiff had 300 days after the alleged discriminatory action to file a claim with the ADU or the EEOC. 29 U.S.C. § 626(d). However, Plaintiff did not file the first charge with the ADU until September 18, 1998, which is more than 300 days after all of the above-referenced possibilities.[1] Therefore, Plaintiff's filing of

---

1. Obviously the September 19, 1998 filing is     not three-hundred days after Plaintiff alleged-

an administrative claim was outside the statutory limit and she must attempt to rely on the equitable modification to make her claim timely.

## Equitable Modification

■ The limitations period in employment discrimination cases are not jurisdictional, but rather is subject to equitable tolling, waiver, and estoppel. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Bonilla,* 194 F.3d at 278, *Chico–Velez v. Roche Products, Inc.,* 139 F.3d 56, 58–59 (1st Cir.1998); *Jensen v. Frank,* 912 F.2d 517, 521 (1st Cir.1990); *Ruffino v. State Street Bank and Trust Co.,* 908 F.Supp. 1019, 1040 (D.Mass.1995). In cases where modification of the statute of limitations has been sought, courts have recognized two distinct but related doctrines: equitable estoppel and equitable tolling. *Ruffino,* 908 F.Supp. at 1041; *see also American Airlines,* 133 F.3d at 124 (*citing Kale* 861 F.2d at 752); *Bonilla,* 194 F.3d at 279; *Jensen,* 912 F.2d at 521 (holding that in order "to qualify for an exception, a complainant must allege and prove, at the least, not only that he had no reason to be aware of his employer's improper motivation when the putative violation occurred, but also that the employer actively misled him and that he relied on the misconduct to his detriment.").

"Both doctrines have their roots in a single notion: Where a defendant has engaged in inequitable conduct, effectively preventing a plaintiff from filing a charge of discrimination, that defendant should not be permitted to escape liability because of his or her own misdeeds." *Id.* citing *Kale v. Combined Ins. Co. of America,* 861 F.2d 746, 752 (1st Cir.1988). The First Circuit Court of Appeals has recognized that the broad purpose underlying anti-discrimination laws favors allowing courts in equity to modify a filing period where appropriate. *Ruffino,* 908 F.Supp. at 1040 n. 39 (*citing Kale* 861 F.2d at 752). However, the court has also suggested that in discrimination cases when considering statutes of limitations the equitable powers should be used sparingly. *Id.* For example, in *Mack v. Great Atlantic and Pacific Tea Co., Inc.,* 871 F.2d 179, 185 (1st Cir.1989), the court warned, "we hew to a narrow view of equitable exceptions to Title VII limitations periods; an exception for concealment is appropriate only where the employer **actively misled the employee** .... This approach, we believe, mirrors the weight of authority." Using these standards, the Court must now determine whether Plaintiff has made the necessary showing that Defendant's inequitable conduct effectively prevented her from filing a charge of discrimination in a timely fashion.

In the case before the Court, Plaintiff makes the following argument to justify the equitable modification of the statute of limitations for bringing the administrative claim. Plaintiff maintains that it was not until early September of 1998 that she became aware that Defendant had decided to recruit substantially younger employees instead of her. Moreover, Plaintiff claims that her lack of diligence in discovering the true reason for her dismissal was hindered by Defendant's alleged misrepresentations concerning the possibility of future employment. Thus, Plaintiff argues that the limitations period should be tolled until she became aware of the alleged facts that led to her termination due to Defendant's misrepresentations.

In support of this argument, Plaintiff cites a line of Fifth Circuit Court of Ap-

---

ly discovered the discriminatory nature of Defendant's actions. However, as the case law demonstrates, the discovery rule does not apply to the accrual of actions.

peals cases standing for the above-stated proposition. *Reeb v. Economic Opportunity Atlanta Inc.*, 516 F.2d 924 (5th Cir. 1975) (holding that the limitations period should be tolled until the plaintiff became aware of the facts necessary to support a charge of discrimination.); *Coke v. General Adjustment Bureau Inc.*, 640 F.2d 584 (5th Cir.1981) (holding that the limitations period should be tolled because defendant misrepresented its intention to reinstate plaintiff, and plaintiff's reasonable reliance on the misrepresentation caused him to miss the filing deadline.); *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876 (5th Cir.1991) (holding that the limitations period should be tolled because plaintiff was told in his severance report that he might be reinstated.) For the reasons that follow, we hold that these cases are inapplicable to the facts of the case at bar.

■ We begin by noting that the First Circuit's application of equitable modification is not as expansive as the Fifth Circuit's. In *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 54 (1st Cir.1999) the court unequivocally held "[s]ome courts permit tolling of the statute of limitations if the plaintiff knew of a harm but not of its discriminatory basis .... But our approach to equitable tolling is narrower; First Circuit law permits equitable tolling only where the employer has actively misled the employee." More importantly, the case at bar is easily distinguishable from the line of Fifth Circuit cases that Plaintiff relies on in her opposition to Defendant's motion. For example in *Rhodes*, the critical facts that the court relied upon to allow plaintiff to use equitable tolling were: (1) the statements in Rhodes' severance report (that he was discharged because of a

reduction-in-force and defendant would try to re-hire him) were revealed to be false, especially in that defendant never offered plaintiff another position; (2) there was no reduction-in-force as far as plaintiff's position was concerned; (3) the position was not eliminated or combined with another position; (4) instead, defendant hired an employee not within the protected age group at a lower salary for plaintiff's former position; and (5) at trial defendant alleged that plaintiff was fired for a poor work performance, thus conceding that the reason for the termination was completely misleading. 927 F.2d at 881. The court in *Rhodes* latched on to this showing of bad faith on the part of defendant, and refused to allow the defendant to raise the time barred defense to defeat plaintiff's claim.

■ In the case at bar, other than her bare assertion that Defendant misled her, Plaintiff has failed to provide sufficient evidence that Defendant's reduction-in-force or "low volume of production due to the transfer of operations to other plants" was a subterfuge or a false pretense for age discrimination. In fact, in making her argument, Plaintiff ignores her own deposition testimony and the available evidence of the ongoing reorganization and consolidation process.[2] Instead, Plaintiff seemingly concedes that her position was transferred but that Defendant failed to accommodate her in other available positions in her department. Unfortunately for Plaintiff, the First Circuit has already decided that anti-age animus could not be inferred from the fact that employees were not offered alternative employment opportunities. *See Pages–Cahue v. Iberia*

---

2. The evidence includes the memorandum sent to Plaintiff explaining the consolidation and reorganization process, and options of accepting a transfer or a lay-off. It also includes, Plaintiff's testimony concerning the

meetings she attended where she was advised by Defendant of the process and her employment alternatives. Finally, there is Defendant's admission that she refused to accept the transfer because it was "too far."

*Lineas Aereas de Espana,* 82 F.3d 533, 538 (1st Cir.1996).

In addition, in this case unlike *Coke,* Defendant's alleged promises to find alternative employment for Plaintiff were not done so as to cause her to miss the filing deadline. In *Coke:*

> On or about May 1, 1976, Coke was demoted from his position as general manager of GAB's Dallas, Texas, office to a position as adjuster. He was 55 years old at the time and was replaced by an employee who was under 40 years of age. Shortly after the demotion, Coke advised Mr. Biegert, an official of one of GAB's largest clients. Mr. Biegert, who knew Coke both professionally and personally, contacted GAB to obtain Coke's reinstatement. Mr. Biegert was assured by GAB that corrective action would be taken to reinstate Coke as manager. The first such contact occurred in May, 1976, but, when Coke was not reinstated, he again advised Biegert who again contacted GAB, who was again assured that Coke would be reinstated. Several more such conversations occurred between Biegert and GAB from May through August, 1976, and on each occasion Biegert was assured by GAB that Coke would be reinstated. On each occasion these assurances were passed along to Coke. Relying on GAB's representations, Coke believed he would be reinstated and did not at that time file the required notice with the Secretary of Labor. Finally, when no corrective action was taken, despite GAB's repeated representations to the contrary, Coke filed the required notice with the Secretary of Labor on December 29, 1976, within 180 days of the last assurance by GAB that Coke would be reinstated, but more than 180 days after the actual demotion on May 1, 1976.

640 F.2d at 586–87.

Here, the evidence lacks the element of bad faith that permeated *Coke* because Defendant's actions and statements concerning potential employment came not in the form of misleading promises that never materialized, but in the form of actual offers of employment. For example, it was Plaintiff who initially turned down Plaintiff's offer to accept a transfer to Arecibo with the same position, salary and benefits. In addition, in December of 1997, Defendant informed Plaintiff of a welding position on the third shift, which Plaintiff also refused to accept. Finally, as recently as December of 1999, Plaintiff refused Defendant's offer to request employment in the Las Piedras facility. These actual offers of employment by Defendant are in sharp contrast to the cases that Plaintiff cites, where the employer misled the employees, who are aware of their rights, into missing the filing deadline with fanciful offers of alternative employment. The only evidence Plaintiff has in support of the alleged misrepresentation is her own deposition testimony wherein she states, "I talked to [Miss Linda] to see if there was an availability for the first shift so that they would call me. And she told me that anything that became available I would be the first one to be called." (Docket # 32, ex. A at 89). Although Defendant flatly denies Plaintiff's allegation, even giving the statement credit-as we must for the purpose of a motion for summary judgment this does not begin to approach the level of active deception required to invoke equitable modification.

Also, unlike the situation in *Rhodes,* where the evidence clearly demonstrated that plaintiff's position was not eliminated and that defendant had hired an employee not within the protected class to fill plain-

tiff's former position, in this case, Plaintiff has produced no credible evidence, other than her self-serving and vague assertions that she was "proficient in the use and operation of each and every machine in the molding department," that her permanent position was replaced by a younger employee. Defendant has produced evidence, which Plaintiff has not controverted, that the two employees who allegedly replaced Plaintiff were not similarly situated to her because they were categorized as "labor 3" and not "labor 4." Moreover, the evidence shows that they were not hired until a year after Plaintiff's layoff, and that they were employed on a temporary (3 month) basis in order to address an urgent need. Finally, the evidence demonstrates that the employees were hired to handle printing needs and not in Plaintiff's position as a booker and stow operator.

Our final reason for the denial of Plaintiff's request for equitable modification is that an examination of Plaintiff's two EEOC administrative complaints demonstrates that she either knew of Defendant's alleged wrong in time to file a complaint within the statutory period, or failed to exercise due diligence in preserving her rights. We begin with the first charge of discrimination, filed on September 18, 1997. In that complaint, which Plaintiff filed before she retained counsel, Plaintiff claimed "last June 20, 1997, and alleging a drop in the volume of production, I was laid off from the company. Nevertheless the company called me back to work and from July 1 until September 27, 1997 I trained the operators of the Cutler–Hammer plant located in Arecibo. **While I worked in Arecibo and afterwards, the company recruited people to work as operators in the Aguas Buenas plant, a place where I worked for 23 years.** Although I have kept in contact with the recruiting staff and the Human Resources area so they will call me to work, the company has opted for recruiting persons that are substantially younger than me." (Docket # 37, translation of 1st EEOC charge). Also important is the fact that Plaintiff indicated that the last act of discrimination occurred on September 27, 1997.

We now turn to the second charge of discrimination, filed on December 29, 1998. In that complaint, made after she had retained counsel, Plaintiff wrote, "[a]fter these incidents, at the beginning of September, 1998, Cutler Hammer hired two employees, younger and not plant employees, to perform the same work that Mrs. Pagan had performed in the Aguas Buenas plant from which she had been dismissed. Said employees are under 40 years of age." (Docket # 37, translation of 2nd EEOC charge). Moreover, Plaintiff indicated that the last act of discrimination occurred in September of 1998.

Regarding Plaintiff's initial EEOC complaint, there are two important points that we deem fatal to her equitable modification argument. First, it is noteworthy, and of great relevance that when Plaintiff filed her initial claim, she stated that the last act of discrimination occurred on September 27, 1997, the approximate date of the second lay-off. Second is the fact that Plaintiff stated that Defendant was recruiting younger employees when she was working in Arecibo from July until September of 1997. These facts are critical because they demonstrate what Plaintiff either knew or should have known during the filing period. Based on the facts as alleged by Plaintiff, her former employer was recruiting employees to replace her shortly after her initial lay-off and during her three-month temporary stint. Moreover, she claims that she was in constant contact with the recruitment office of her former employer. These facts lead the Court to two possible conclusions, both of

which are ruinous to Plaintiff's request for modification. The first possibility is that Plaintiff realized that the younger employees were being hired from July until September of 1997 and she did nothing to protect her rights. The other possibility is that Defendant hired these younger employees from the time period of July until September of 1997, and Plaintiff failed to realize this occurrence despite being in contact with her former employer. This scenario, the Court concludes, demonstrates a lack of diligence by Plaintiff, who clearly could have realized, during the span of an entire year, that her former position was filled by her employer.

Finally, regarding Plaintiff's second filing before the EEOC, we agree with Defendant that it is was a last-ditch effort by Plaintiff, after she had retained counsel, to save an otherwise untimely claim. This conclusion is supported by two minor yet significant changes that Plaintiff, with the aide of counsel, made in the second filing. First, Plaintiff omitted any mention of Defendant's recruitment of younger employees during the time period between July and September of 1997. Instead, Plaintiff alleged that it was not until early September of 1998, that two younger employees were hired to fill her former position. Second, in the latter filing, Plaintiff changed the last act of discrimination from September of 1997 to September of 1998. This too, presumably, to save an otherwise time-barred claim. In sum, we do not agree with Plaintiff that equity should toll the statute of limitations, especially when it has been Plaintiff who placed the inconsistencies on the record.

**Conclusion**

For the reasons set forth in this Opinion and Order, Defendant's motion for summary judgment (Docket # 25) is **GRANTED**. As such, Plaintiff's claims under the ADEA and Title VII are **DISMISSED WITH PREJUDICE**.

With regard to Plaintiff's supplemental Commonwealth claims, it is hornbook law that a district court has discretion to exercise supplemental jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. *See* 28 U.S.C. § 1367; *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Nevertheless, where, as here, all federal claims warrant dismissal prior to trial, the district court should decline to exercise supplemental jurisdiction. In accordance with this practice, Plaintiff's claims under "Law 100" and "Law 80" are **DISMISSED WITHOUT PREJUDICE**. Judgment will be entered accordingly.

**SO ORDERED.**